1  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   BRADFORD K. NEWMAN (SB# 178902) bradfordnewman@paulhastings.com
2  SHANNON S. SEVEY (SB# 229319) shannonsevey@paulhastings.com
   5 Palo Alto Square
3  Sixth Floor
   Palo Alto, CA  94306
4  Telephone:  (650) 320-1800
   Facsimile:  (650) 320-1900
5

6  Attorneys for Plaintiff
   ARCSOFT INC.
7

ORIGINAL
FILED

JUL - 6 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  ARCSOFT INC.,                        CASE NO. C07-03512 SC

13              Plaintiff,               **ARCSOFT INC.'S *EX PARTE***
                                         **APPLICATION FOR TEMPORARY**
14         v.                            **RESTRAINING ORDER, EVIDENCE**
                                         **PRESERVATION ORDER, ORDER TO**
15  PAUL FRIEDMAN,                       **SHOW CAUSE RE ISSUANCE OF**
                                         **PRELIMINARY INJUNCTION, AND**
16              Defendant.               **ORDER GRANTING EXPEDITED**
                                         **DISCOVERY**
17

18                                       Date:  July 6, 2007
                                         Time:  9:30 a.m.
19                                       Dept.: Courtroom 1, 17th Fl.
                                         Bef:   The Hon. Samuel Conti
20

21

22

23

24

25

26

27

28
                                         ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
                                         EVID. PRESERV. ORDER, OSC RE: ISSUANCE
     Case No. C07-03512 SC               OF PRELIM. INJ. EXPED. DISC.

1

# TABLE OF CONTENTS

2

I.    INTRODUCTION ...................................................................................................5

II.   STATEMENT OF FACTS ......................................................................................7

    A.   ArcSoft Is A Leading Provider of Multimedia Software And Firmware Solutions And Takes Great Measures To Safeguard Its Confidential And Proprietary Information ...........................................................................................................7

    B.   After ArcSoft Eliminates Friedman's Position Due To Friedman's Poor Sales Performance, Friedman Threatens ArcSoft And Demands Two Years' Severance ........................................................................................................8

    C.   Friedman Steals His ArcSoft-Provided Laptop Computer As "Leverage" To Acquire The Severance He Demanded..............................................................9

    D.   Friedman Refuses To Return The Stolen Laptop Or To Confirm His Agreement To Abide By His Obligation To Protect And Return ArcSoft's Proprietary Information And Other Property.........................................................................9

    E.   Friedman Admits To Stealing ArcSoft's Laptop Computer And States That He Intends To Keep It As "Leverage" Against ArcSoft ....................................10

    F.   Friedman Continues To Refuse To Return ArcSoft's Stolen Laptop Computer Even In Response To Police Intervention...........................................................10

    G.   Friedman Finally Agrees To Return The Laptop, But Only After Unsuccessfully Attempting To Access ArcSoft's Computer Network............................................10

    H.   Friedman Finally Returns The Stolen Laptop In Inoperable Condition and Wiped Clean of All Data .................................................................................................12

    I.   Forensic Analysis Proves That The Laptop Computer Was Wiped Of All Data While In Friedman's Possession......................................................................12

    J.   Friedman Refuses To Confirm What Proprietary Data He Stole, Even After Being Confronted With Evidence That He Erased The Stolen Laptop's Contents.........13

    K.   ArcSoft Will Suffer Irreparable Harm If Immediate Injunctive Relief Is Not Issued..........................................................................................13

III.  ARGUMENT..........................................................................................................14

    A.   There Is A Strong Likelihood That ArcSoft Will Succeed On The Merits Of Its Complaint..................................................................................................15

        1.   Friedman Must Be Immediately Enjoined To Prevent Any Further Violations Of The Computer Fraud And Abuse Act ..................................15

        2.   Friedman Must Be Immediately Enjoined, As He Has Violated California Penal Code Section 502 ..........................................................................17

i

3.   Friedman Must Be Immediately Enjoined, As He Has Already Engaged In Conversion And Threatens To Do So In The Future..................................18

B.   ArcSoft Will Suffer Irreparable Harm If Friedman Is Not Immediately Enjoined......................................................................................19

C.   Friedman Will Suffer Little Or No Interim Harm If A TRO Is Issued.................20

IV.   COURT INTERVENTION IS ALSO REQUIRED TO PREVENT THE DESTRUCTION OF ESSENTIAL EVIDENCE.............................................................................................20

V.   EXPEDITED DISCOVERY IS NECESSARY TO REVEAL THE FULL EXTENT OF FRIEDMAN'S UNLAWFUL CONDUCT AND THE IRREPARABLE HARM ARCSOFT SUFFERED AND CONTINUES TO SUFFER.............................................21

VI.   CONCLUSION.......................................................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. C07-03512 SC

ii

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
EVID. PRESERV. ORDER, OSC RE: ISSUANCE
OF PRELIM. INJ. EXPED. DISC.

1

# TABLE OF AUTHORITIES

2

## CASES

3

Burlesci v. Petersen
68 Cal. App. 4th 1062 (1998) ................................................................................18, 19

4

5

Cassim v. Bowen
824 F.2d 791 (9th Cir. 1987) ................................................................................14, 17

6

Gladstone v. Hillel
203 Cal. App. 3d 977 (1988) ................................................................................18, 19

7

8

Heller v. New York
413 U.S. 483 (1972)................................................................................................21

9

Iconix, Inc. v. Tokuda
457 F. Supp. 2d 969 (D. Cal. 2006).............................................................................17

10

11

International Airport Centers, LLC v. Citrin
440 F.3d 418 (7th Cir. 2006) ...................................................................................15

12

Leon v. IDX Systems Corporation
464 F.3d 951 (9th Cir. 2006) ...................................................................................16

13

14

Pac. Aero. & Elecs., Inc. v. Taylor
295 F. Supp. 2d 1188 (D. Wash. 2003). ................................................................15, 17

15

Roe v. Anderson
134 F.3d 1400 (9th Cir. 1998) .................................................................................14,

16

17

Sega Enterprises Ltd. v. Accolade, Inc.
977 F.2d 1510 (9th Cir.1992) ...............................................................................14, 17

18

Therapeutic Research Faculty v. NBTY, Inc.
2007 U.S. Dist. LEXIS 8147, 17-18 (D. Cal. 2007)........................................................17

19

20

## STATUTES

21

22

Computer Fraud and Abuse Act, 18 U.S.C. §1030 et seq ........................................*passim*

23

California Penal Code Section 502...............................................................................17

24

25

26

27

28

iii

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
EVID. PRESERV. ORDER, OSC RE: ISSUANCE
OF PRELIM. INJ. EXPED. DISC.

## EX PARTE APPLICATION

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Northern District Local Rule 65-1 and 65-2, the Computer Fraud and Abuse Act, 18 U.S.C. §1030 *et seq.* ("CFAA"), and California Penal Code section 502, Plaintiff ArcSoft Inc. ("ArcSoft") hereby applies for a Temporary Restraining Order, Evidence Preservation Order, Expedited Discovery Order, and Order To Show Cause Re Issuance of Preliminary Injunction against its former employee, Defendant Paul Friedman ("Friedman") , as set forth in the Proposed Order filed herewith.

### I.    Basis of TRO Application And Relief Sought

ArcSoft applies for a restraining order and injunctive relief on the grounds that:

1.  Following the termination of his employment from ArcSoft, Friedman did retain, without lawful justification, his company-issued laptop and the data then stored on it;

2.  After repeated requests by ArcSoft that the laptop be immediately returned, and after the Fremont Police were called to the scene and made contact with Friedman and requested he return the ArcSoft laptop, Friedman refused to return the ArcSoft laptop;

3.  While Friedman provided conflicting reasons for retaining the laptop, he admitted that at least one of the reasons he retained possession of the laptop following his termination was for the purpose of accessing data on the laptop (which he claimed was "personal" but as to which no such finding can be made in light of his destruction of evidence);

4.  During the time he unlawfully retained the laptop, Friedman attempted to use the laptop to log on remotely to ArcSoft's servers through the use of VPN software;

5.  During the time he unlawfully retained the laptop, and **after** specifically being cautioned in writing by ArcSoft to preserve and not deleted any of the contents of the stolen laptop, Friedman loaded a wiping program onto the ArcSoft laptop and ran the program for the purpose of deleting all data stored on the computer, and in doing so, deleted all forensic evidence of what files he accessed and/or removed from the laptop;

6.  When he returned the laptop to ArcSoft approximately 29 hours after he first retained the laptop without lawful justification, it was not in proper working condition and a third party forensic expert determined that all data had in fact been wiped off of the computer;

-1-    ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO, EVID. PRESERV. ORDER, OSC RE: ISSUANCE OF PRELIM INJ. EXPED. DISC.

1    7.  When ArcSoft thereafter inquired of Friedman in writing on multiple occasions

2  concerning (a) what files on the laptop he accessed during the time in question; (b) what files that

3  resided on the laptop prior to his wiping all contents of the laptop he copied to another source

4  during the time in question; (c) who else accessed the ArcSoft data on the laptop during the time

5  in question; (d) what program he used to wipe the data off the laptop; and (e) whether he had in

6  fact returned all hard and electronic copies of any ArcSoft data to ArcSoft, Friedman refused to

7  answer these questions;

8    8.  When ArcSoft provided Friedman with written notice it was rescinding a three-

9  month severance offer, Friedman replied "do you want to try to get your pc problem fixed?",

10  demonstrating that Friedman is in possession of facts that can potentially help ArcSoft recover the

11  data that Friedman deleted off of the laptop, but which facts Friedman has refused to voluntarily

12  disclose to ArcSoft absent the payment of some monetary consideration;

13    9.  Because of this conduct, ArcSoft faces the threat of the following imminent and

14  irreparable injury:

15    A.  That further relevant evidence, including ArcSoft data, will be lost or

16  destroyed;

17    B.  That unauthorized third parties, including Friedman, will enjoy unauthorized

18  access to and use of ArcSoft technical, business and related data and information that these

19  parties have no lawful right to possess;

20    C.  That ArcSoft customer data will be compromised, which in turn, threatens to

21  irreparably harm ArcSoft's customer relationships and its business;

22    D.  That ArcSoft will lose the ability to utilize data and information deleted off of

23  the laptop but which Friedman has cached and/or has the ability to help ArcSoft recover;

24    E.  That with the passage of time, ArcSoft's chances of successfully recovering

25  the data at issue is lessened based on various factors, including diminishing witnesses memories,

26  the chance that data which may have been copied will be hidden or disposed of, and the fact that

27  from a technological perspective, electronic data and the preservation of the same is subject to

28  many human and machine perils.

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
EVID. PRESERV. ORDER, OSC RE: ISSUANCE
OF PRELIM INJ EXPED DISC

1    ArcSoft applies for immediate injunctive relief in the form of an Order:

2    (1)    That Friedman is immediately restrained from accessing, using, or disclosing to

3    anyone any confidential and/or proprietary information of ArcSoft that is in his current

4    possession, custody, or control, and/or that he retained after being terminated by ArcSoft;

5    (2)    That Friedman return to counsel for ArcSoft all information, data, or documents in

6    his possession, custody, or control that he accessed or acquired, in whole or in part, in connection

7    with his employment with ArcSoft, including, without limitation, the electronic data identified

8    pursuant to the Court's Order;

9    (3)    That Friedman identify under penalty of perjury each and every file and piece of

10   electronic data (by name, hash marks, and any other identifying means) he accessed, removed,

11   and/or copied from the ArcSoft laptop he retained following the termination of his employment,

12   as well as the current location of all such data;

13   (4)    That Friedman identify under penalty of perjury and with specificity (including the

14   name of the program, the manufacturer, and the version number) the particular type of wiping

15   program he used to delete data off of the ArcSoft Laptop, at what precise date and time he used

16   this wiping program, and the precise steps he took to execute the program's deletion function;

17   (5)    That Friedman identify under penalty of perjury all Electronic Storage Devices

18   (including but not limited to home computers, thumb drives, compact discs or DVDs, hard drives,

19   private email accounts (including Internet-based email accounts), and other media capable of

20   storing electronic data) in his possession, custody and control and/or to which he has access from

21   January 1, 2007 to the present, and make such Electronic Storage Devices available to a third

22   party forensic expert for ArcSoft, so that the third party expert can forensically image and

23   preserve the data on these Electronic Storage Devices for later inspection through the discovery

24   process;

25   (6)    That Friedman identify under penalty of perjury (A) all persons (including any

26   attorney, whether or not such attorney be an immediate family member or relative) who have

27   been given access to any ArcSoft property, (B) when such access occurred, and (C) what use was

28   made of such data by the identified persons.

-3-    ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO, EVID. PRESERV. ORDER, OSC RE: ISSUANCE OF PRELIM. INJ. EXPED. DISC.

Based on the factual showing, including but not limited to the facts that Friedman refused to return the laptop even when directed to do so by a law enforcement officer, subsequently and intentionally destroyed evidence after being cautioned in writing not to do so, and then refused ArcSoft's subsequent pleas for assistance in recovering the data while engaging in conduct demonstrating that he lacks remorse for his actions, ArcSoft believes there is a serious, substantial and likely risk that providing Friedman with notice prior to issuance of the requested injunctive relief would lead to the further and presumably permanent destruction of evidence by Friedman.

## II.    Evidence Preservation Order

In order to ensure that ArcSoft's proprietary data and key evidence is not destroyed prior to final adjudication or other resolution of this action, ArcSoft requests the Court to issue an order:

(1)    That Friedman be restrained and prohibited from destroying, altering, erasing, or otherwise modifying, or causing or permitting anyone else to destroy, alter, erase, or otherwise modify, any evidence relating to this action, including, but not limited to:

(A)    Any and all data in computerized files stored or located on computers, USB drives, external hard drives, or any other external storage device or email account within the possession, custody or control of Friedman, including, without limitation, any and all documents relating to ArcSoft and/or its confidential and/or proprietary information;

(B)    Any and all documents maintained in hard copy, paper form relating to ArcSoft and/or its confidential and/or proprietary information; and

(C)    Computers, floppy diskettes, USB Flash Drives, external hard drives, or other external storage devices within the possession, custody or control of Friedman.

## III.    Expedited Discovery

To ensure that all ArcSoft data in Friedman's possession and/or control is accounted for, and to ensure a timely and informed preliminary injunction hearing, ArcSoft requests the Court issue an Order permitting it to issue fifteen (15) special interrogatories and fifteen (15) document requests, and requiring Friedman to provide full, complete, and FRCP-compliant written responses to this discovery, and to produce all documents that are responsive to ArcSoft's

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO, EVID. PRESERV. ORDER, OSC RE: ISSUANCE OF PRELIM. INJ., EXPED. DISC.

1  document requests, within seven (7) calendar days.  ArcSoft also requests that the Court permit it

2  to take the deposition of Friedman on an expedited basis.

3       **IV.     Order To Show Cause**

4            ArcSoft requests that Friedman be ordered to appear before the Court, at a date, time and

5  place to be set, to show cause why the Court should not issue a Preliminary Injunction consistent

6  with the TRO.

7            This *Ex Parte* Application is based on this Application, the Memorandum of Points and

8  Authorities in support thereof, the Declarations of Shannon S. Sevey, Victor Chen, Tonie

9  Berryman, Anthony Adion, and Lee Curtis filed concurrently herewith (and the exhibits thereto),

10  the Proposed Order filed herewith, and such further papers, evidence, and arguments as may be

11  submitted to the Court.

12       **MEMORANDUM OF POINTS AND AUTHORITIES**

13  **I.     INTRODUCTION**

14            This action for violation of the Computer Fraud and Abuse Act, breach of contract,

15  violation of California Penal Code Section 502, breach of fiduciary duty and duty of loyalty,

16  conversion, and unjust enrichment arises out of Defendant Paul Friedman's theft of ArcSoft's

17  laptop computer and the intentional destruction of ArcSoft's confidential and proprietary

18  information.

19            Upon learning of his termination for poor performance, Friedman stole his ArcSoft-issued

20  laptop computer (the "Stolen Laptop"), which contained proprietary information of ArcSoft, and

21  refused to return it for twenty-nine hours – even at the directive of the local police – so that, by

22  his own admission, he could use it as "leverage" to obtain a large severance package to which he

23  was not entitled and so he could access and remove any files he deemed "personal" without any

24  oversight or supervision by ArcSoft or the Fremont Police.  Prior to returning the Stolen Laptop,

25  Friedman engaged in a series of unauthorized and unlawful conduct, including accessing the

26  Stolen Laptop in unauthorized fashion, attempting to "hack" into ArcSoft's computer networks,

27  and ultimately loading and running an erasing program onto the Stolen Laptop to destroy all data

28  and evidence contained therein.  Friedman is also believed to have copied ArcSoft proprietary

1    data from the Stolen Laptop prior to erasing it.

2        By his actions, Friedman has caused irreparable harm to ArcSoft and threatens to cause

3    additional irreparable harm unless immediately enjoined. In response to ArcSoft revoking its

4    offer of three months' severance via email, Friedman sent a one sentence reply: ***do you want to***

5    ***try to get your pc [personal computer] problem fixed?*** This statement not only evidences an

6    extortionist mentality consistent with Friedman's behavior of flouting the request of his former

7    employer and the Fremont Police to return the Stolen Laptop, but demonstrates that, by his own

8    admission, Friedman possesses information concerning the Stolen Laptop and ArcSoft data that is

9    at risk of being lost, destroyed, hidden, accessed or modified if Friedman is not immediately

10    restrained. Additionally, ArcSoft believes that some of the proprietary information that was

11    stored on Friedman's laptop was the only copy thereof, meaning that if Friedman is not ordered to

12    preserve and return any and all copies he made of the data, it may be lost to ArcSoft forever.

13        Without immediate injunctive relief ArcSoft faces the threat of imminent and irreparable

14    injury including:

15        1. That further relevant evidence, including ArcSoft data, will be lost or destroyed;

16        2. That unauthorized third parties, including Friedman, will enjoy unauthorized access to

17    and use of ArcSoft technical, business and related data and information that these parties have no

18    lawful right to possess;

19        3. That ArcSoft customer data will be compromised, which in turn, threatens to

20    irreparably harm ArcSoft's customer relationships and its business;

21        4. That ArcSoft will lose the ability to utilize data and information deleted off of the

22    laptop but which Friedman has cached and/or has the ability to help ArcSoft recover;

23        5. That pending the outcome of this action, and assuming the passage of time does not

24    result in the further destruction of evidence, ArcSoft will lose the benefit of being able to use the

25    data at issue;

26        6. That with the passage of time, ArcSoft's chances of successfully recovering the data at

27    issue is lessened based on various factors, including diminishing witnesses memories, the chance

28    that data which may have been copied will be hidden or disposed of, and the fact that from a

1   technological perspective, electronic data and the preservation of the same is subject to many

2   human and technological perils.

3          On the other hand, in light of ArcSoft's strong likelihood of success on the merits and the

4   specific nature of the injunctive relief being sought, granting the temporary restraining order will

5   result in no prejudice to Friedman, as it simply ensures preservation of evidence and the *status*

6   *quo ante* with regard to a defendant who has demonstrated a pattern of flouting the law and has

7   willfully destroyed evidence.

8   **II.    STATEMENT OF FACTS**

9          **A.    ArcSoft Is A Leading Provider of Multimedia Software And Firmware
               Solutions And Takes Great Measures To Safeguard Its Confidential And**
10             **Proprietary Information**

11         ArcSoft designs and develops multimedia software and firmware solutions for personal

12  computer, mobile device, and consumer electronics manufacturers, which includes innovative

13  digital imaging technologies and multimedia solutions.  ArcSoft has an extensive line of products,

14  tools, and technologies which includes everything from image enhancement, printing, video

15  editing, DVD authoring, to embedded and mobile technologies.  ArcSoft's products are offered in

16  multiple languages and can be found in device bundles throughout the world.  ArcSoft is a

17  privately held international company established in 1994 with headquarters in Fremont,

18  California, and regional offices in Europe and Asia.  Declaration of Tonie Berryman ("Berryman

19  Decl."), ¶ 3.

20         ArcSoft's success in the multimedia software and firmware solutions industry is due in

21  part to its superior confidential and proprietary information.  Over the course of years, and at

22  significant expense, ArcSoft has developed and maintained significant amounts of highly

23  confidential information that is proprietary to it, including without limitation, engineering

24  specifications for ArcSoft's mobile products, product road maps, strategic plans and forecasts,

25  internal financial data, marketing documents, proprietary information regarding key contracts,

26  and other strategic and financial data.  Id., ¶ 6.

27         As a senior sales executive at ArcSoft for three years, Friedman had direct access to both

28  ArcSoft's customers and its proprietary, trade secret information.  In light of this regular and

1   unfettered access, as well as the highly competitive nature of ArcSoft's industry, Friedman signed

2   ArcSoft's standard Employee Confidentiality Agreement, and executed and agreed to abide by

3   ArcSoft's Company Property Policy, and ArcSoft's Computer, E-Mail And Internet Use Policy,

4   each of which set forth Friedman's obligation to protect ArcSoft's proprietary information,

5   including Friedman's obligation not to retain, disclose or use ArcSoft confidential and proprietary

6   information upon the conclusion of his employment. Id., ¶ 6, 9-13, Exs. A-C.

7       **B.    After ArcSoft Eliminates Friedman's Position Due To Friedman's Poor Sales**
            **Performance, Friedman Threatens ArcSoft And Demands Two Years'**
8           **Severance**

9           In June 2007, ArcSoft evaluated the sales performance of its mobile division and

10  concluded that, due to Friedman's failure to procure sales to key European customers of

11  ArcSoft's mobile division, his position should be eliminated. Id., ¶ 16.

12          On June 26, 2007, ArcSoft's Manager of Human Resources, Tonie Berryman, asked

13  Friedman, who was in his office using the laptop computer ArcSoft provided to him, to join her

14  and ArcSoft's Chief Executive Officer, Michael Deng, in a conference room.  When all three

15  were situated in the conference room, Deng informed Friedman that his employment was being

16  terminated.  Deng also informed Friedman that, although his employment was being terminated

17  due to poor performance, the Company had elected to offer him severance in the amount of three

18  months of salary and benefits. Id.

19          Upon learning that his employment was being terminated, Friedman became upset and

20  began lodging threats against ArcSoft.  Stating that he "did not accept" his termination, Friedman,

21  a three-year employee of ArcSoft, told Deng and Berryman that he would not accept "anything

22  less than two years of pay and benefits," and stated *that if ArcSoft did not meet his demands, he*

23  *would make it "very unpleasant for [Deng], ArcSoft, the Shareholders and the Board of*

24  *Directors, and you don't even want to go down that path."* Id., ¶ 17-19.  When Deng indicated

25  he would not reconsider ArcSoft's severance offer, Friedman told Deng that he should "carefully

26  consider" what ArcSoft was doing and warned Deng, "If you wish to proceed down this path, it is

27  going to get very expensive for ArcSoft and I guarantee it." Id., ¶ 19.

28

Case No. C07-03512 SC

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
EVID. PRESERV. ORDER, OSC RE: ISSUANCE
OF PRELIM INJ. EXPED. DISC.

**C.  Friedman Steals His ArcSoft-Provided Laptop Computer As "Leverage" To Acquire The Severance He Demanded**

Refusing to acquiesce to Friedman's demands, Berryman and Deng attempted to review with Friedman ArcSoft's standard exit interview documentation (which includes ArcSoft's Confidentiality Agreement for Terminating Employees, an agreement which confirms the departing employee's obligation to protect and not retain or misuse ArcSoft's proprietary information). However, Friedman refused to review any documents and left the room. Id., ¶ 20.

A few minutes later, Berryman observed Friedman walking to his car carrying a brown leather bag. Concerned by what the bag might contain, Berryman, along with Rob Mjaseth (Operations Manager) and Matt Williams (Customer Service Manager) went to Friedman's office, at which time they discovered that Friedman's ArcSoft-issued laptop, which Berryman had seen Friedman using only fifteen minutes earlier, was gone. Id., ¶¶ 15, 21. ArcSoft then shut off Friedman's access to its computer network and email system. Id., ¶ 23; Declaration of Anthony Adion ("Adion Decl."), ¶ 2.

**D.  Friedman Refuses To Return The Stolen Laptop Or To Confirm His Agreement To Abide By His Obligation To Protect And Return ArcSoft's Proprietary Information And Other Property**

A few minutes later, Friedman returned from the parking lot, but was no longer carrying the bag he removed from ArcSoft's offices. He then proceeded to meet with Berryman and Deng for a second time (which Berryman used to attempt, for a second time, to review the Company's standard exit interview documentation with Friedman). Id., ¶ 24. When Friedman again refused to sign the Confidentiality Agreement for Terminating Employees, Berryman reminded him that he was still bound by the Confidentiality Agreement and policies he executed at the outset of his employment and requested that he return all proprietary information of ArcSoft. Friedman responded by laughing at Berryman, indicating that he did not intend to comply with her instruction or his contractual obligation. Id., ¶¶ 24-25.

Thereafter, when his request to speak with Deng alone was denied, Friedman pointed to Berryman and said, "Fine, but I am telling you now, you had better contact your attorney and your insurance company." Berryman responded by asking on what grounds she should do so, but

1    Friedman would not answer her question and stated "just nevermind." Id., ¶ 26.

2          **E.**    **Friedman Admits To Stealing ArcSoft's Laptop Computer And States That**
3                    **He Intends To Keep It As "Leverage" Against ArcSoft**

4          After allowing Friedman to go to his office to gather his personal belongings, Berryman

5    approached Friedman and asked him whether he had taken the Stolen Laptop. Friedman admitted

6    to having done so, and stated that he would not return the Stolen Laptop because it *"is the only*

7    *thing [he] had to leverage with."* Id., ¶ 27-28. Friedman even refused to return the Stolen

8    Laptop when Berryman informed him that ArcSoft would involve the police if he did not

9    cooperate. Accordingly, Berryman instructed another employee to call the police, and Friedman

10   proceeded outside (along with Williams, who helped Friedman carry his personal belongings, and

11   Berryman). Id., ¶ 30.

12         **F.**    **Friedman Continues To Refuse To Return ArcSoft's Stolen Laptop**
13                   **Computer Even In Response To Police Intervention**

14         Approximately ten minutes after Friedman left ArcSoft's offices, Officer Chad Bosques of

15   the Fremont Police Department arrived in response to ArcSoft's call. Along with Berryman,

16   Officer Bosques called Friedman to request that he return the Stolen Laptop to ArcSoft

17   immediately. Officer Bosques also informed Friedman that, if he did not immediately return the

18   Stolen Laptop, he could be arrested for felony Grand Larceny. Id., ¶ 31.

19         Friedman then asked to speak with Berryman. When Berryman picked up the telephone,

20   Friedman attempted to delay the return of the Stolen Laptop, purportedly so that he could remove

21   his personal files. When Berryman indicated that the immediate return of the Stolen Laptop was

22   not negotiable, and offered to work with ArcSoft's IT Department to remove Friedman's personal

23   files as soon as Friedman returned the Laptop, Friedman still would not agree to return the Stolen

24   Laptop. Officer Bosques also tried for a second time to convince Friedman to return the Stolen

25   Laptop, but to no avail. Id., ¶ 33.

26         **G.**    **Friedman Finally Agrees To Return The Laptop, But Only After**
27                   **Unsuccessfully Attempting To Access ArcSoft's Computer Network**

28         Friedman holds a degree in Computer Science and is technically savvy. Id., ¶ 4. After

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
EVID. PRESERV. ORDER, OSC RE: ISSUANCE
OF PRELIM. INJ., EXPED. DISC.

1   more than twenty-four hours passed since Friedman stole the Laptop, on June 27, 2007, ArcSoft's

2   Corporate Counsel, Victor Chen, sent an email to Friedman requesting that Friedman return the

3   Stolen Laptop and expressing concern regarding the protection of the proprietary and trade secret

4   information contained therein.  Declaration of Victor Chen ("Chen Decl."), Ex. A.  Friedman

5   responded to this email by falsely stating that he had been "attempting to return" the Stolen

6   Laptop since the prior day, which he clearly had not done.  Id., Ex. B.

7         Chen then sent an email to Friedman correcting his misrepresentations and reminding

8   Friedman that ArcSoft would be able to ascertain (through forensic analysis) what Friedman had

9   done with the Stolen Laptop after stealing it.  In this email, Chen also requested that Friedman

10  identify what use he had made of the Stolen Laptop, and what information he copied or disclosed.

11  *However, Friedman ignored all of these questions*.  Id., ¶ 7, Ex. C.

12        Thereafter, Chen called Friedman to arrange for the return of the laptop.  Although he

13  originally agreed to allow ArcSoft to retrieve the Stolen Laptop via courier, he suddenly changed

14  his mind, and attempted to further delay the return of the Stolen Computer by purporting to offer

15  to come to ArcSoft's offices to return the Stolen Laptop.  When his delay tactics proved

16  unsuccessful, he finally agreed to meet Chen at a local hotel later than afternoon to return the

17  Stolen Laptop.  Id., ¶¶ 8-11.

18        Unbeknownst to ArcSoft, however, Friedman had continued to use the Stolen Laptop after

19  he removed it from ArcSoft's offices.  ArcSoft's Virtual Private Network ("VPN") access log

20  reveals that, at 8:19 a.m. on June 27, 2007 (i.e. approximately twenty-one hours after taking the

21  Laptop and eight hours before finally returning it), Friedman attempted (albeit unsuccessfully) to

22  log onto ArcSoft's computer network and e-mail systems.  Adion Decl., ¶ 3, Ex. A.  Friedman did

23  not have permission to access ArcSoft's computer systems at this time, nor did he notify ArcSoft

24  that he would be doing so when he stated that he needed to retain the computer to take his

25  "personal items" off of the Laptop.  Berryman Decl., ¶ 23, 25; Adion Decl., ¶ 2; Chen Decl., ¶ 5,

26  Ex. A.  Indeed, Friedman's attempt to access the ArcSoft network is inconsistent with his prior

27  statement that he needed the Stolen Laptop for the purpose of removing "personal" files from it.

28  Berryman Decl., ¶ 33.

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
EVID. PRESERV. ORDER, OSC RE: ISSUANCE
OF PRELIM. INJ. EXPED. DISC.

**H.    Friedman Finally Returns The Stolen Laptop In Inoperable Condition and Wiped Clean of All Data**

Shortly after 4:00 p.m. on June 27, 2007, Friedman, Chen, and Anthony Adion, ArcSoft's Corporate IT Manager, met at the Marriott Hotel in Fremont. After confirming that he would receive a receipt for the Laptop, Friedman proceeded to attempt to turn the computer on, stating, in unsolicited fashion, that he wanted to show Chen that the Stolen Laptop was "still working" (a statement staged to fool ArcSoft into believing that Friedman had not damaged or destroyed any ArcSoft data). However, the Stolen Laptop did not start properly, and after a few moments, Chen noticed that the Laptop's screen displayed a message including the words "Disk Error." Chen Decl., ¶¶ 12-15, Ex. D; Adion Decl., ¶¶ 6-8.

Chen then requested – as he had requested in writing on four previous occasions – that Friedman identify what use had been made of the Stolen Laptop while it was in Friedman's possession, and what proprietary information was contained on the Stolen Laptop. However, Friedman simply repeated that he was there to return the computer and company-issued cell phone, get a receipt, and "nothing else." Although Chen attempted to probe further, Friedman repeated this statement over and over, refusing to respond to any question Chen posed. Chen Decl., ¶ 17-18, Ex. E; Adion Decl., ¶ 9-10.

**I.    Forensic Analysis Proves That The Laptop Computer Was Wiped Of All Data While In Friedman's Possession**

After reclaiming its Stolen Laptop, ArcSoft engaged a forensic expert, Aon Consulting, to examine the Laptop. Using the Encase computer program to "preview" the Laptop (meaning to review the contents of the hard drive without altering any information contained therein), Aon observed that the Stolen Laptop had no data, no partition, no master file table, and no information on the hard drive, and instead contained nothing other than the pattern "................................" throughout the entire space normally dedicated to the hard drive. In other words, *the entire contents of the Stolen Laptop – including data, programs, and the entire operating system – had been erased and cannot be recovered.* Declaration of Lee Curtis ("Curtis Decl."), ¶¶ 16-20.

In light of the fact that Friedman attempted to access ArcSoft's computer network through the VPN access program at 8:19 a.m. on the day he returned the Stolen Laptop, which he is

1  believed to have done through the use of the Stolen Computer, *Friedman used the wiping*

2  *program sometime between 8:20 a.m. and 4 p.m. – i.e., at or near the time that Chen expressly*

3  *instructed him not to take any action which would alter, damage, or destroy any ArcSoft*

4  *proprietary information.*  Curtis Decl., ¶ 16-20; Adion Decl., ¶ 3, Ex. A; Chen Decl., Ex. A.

5  **J.   Friedman Refuses To Confirm What Proprietary Data He Stole, Even After**
   **Being Confronted With Evidence That He Erased The Stolen Laptop's**
6  **Contents**

7  After confirming that the Stolen Laptop's hard drive had been erased, Chen wrote to

8  Friedman to inform him of the results of Aon's forensic analysis, and stating:

9  > ArcSoft demands to know what methodology you used to wipe the computer, and
   > whether prior to wiping the data, you made any copies of the data or forwarded
10 > any data to private Web-based accounts or third parties.

11 Chen Decl., Ex. G.  In response, Friedman acknowledged that the Stolen Laptop contained

12 ArcSoft's proprietary data when he took it, but would not answer ArcSoft's questions regarding

13 what had happened to the Stolen Laptop since Friedman stole it.  Friedman also falsely stated that

14 he had returned the laptop computer in working condition, failing to address the forensic proof to

15 the contrary and the fact that he had been unable to start the laptop the prior day.  Id., Ex. H.

16 Thereafter, Chen wrote another email to Friedman, this time correcting Friedman's false

17 statement that he had returned the computer in working condition, explaining the forensic data

18 which proved that Friedman, alone or in concert with others, intentionally erased the contents of

19 the computer, and recounting the inconsistent stories Friedman provided as to why he "needed" to

20 keep ArcSoft's laptop for more than twenty-four hours.  Chen then asked once again:

21 > *[D]uring the time the stolen computer was in your possession, who accessed it*
   > *in addition to you?*  Also, you noticeably failed to respond to the inquiries in my
22 > earlier email, so I ask again:  *What methodology did you use to wipe the*
   > *computer, and prior to wiping the data, did you make any copies of the data or*
23 > *forward any data to private Web-based accounts or third parties?*

24
   Chen Decl., Ex. I (emphasis added).  However, *once again, Friedman ignored these questions*.
25
   Chen Decl., Ex. J.
26
   **K.   ArcSoft Will Suffer Irreparable Harm If Immediate Injunctive Relief Is Not**
27 **Issued**

28 By his actions, Friedman has caused irreparable harm to ArcSoft and threatens to cause

Case No. C07-03512 SC

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
EVID. PRESERV. ORDER, OSC RE: ISSUANCE
OF PRELIM. INJ. EXPED. DISC.

1    additional irreparable harm unless enjoined.  After learning of Friedman's actions, ArcSoft's

2    Human Resources Manager emailed Friedman to revoke ArcSoft's offer of three month's

3    severance.  In response, Friedman emailed ArcSoft back a one sentence reply: ***"do you want to***

4    ***try to get your pc [personal computer] problem fixed"?***  This statement not only evidences an

5    extortionist mentality consistent with Friedman's behavior of flouting the request of his former

6    employer and the Fremont Police to return the Stolen Laptop, but demonstrates that, by his own

7    admission, ***Friedman is in possession of information concerning the Stolen Laptop and ArcSoft***

8    ***data that is at risk of being lost, destroyed, hidden, accessed or modified if immediate Friedman***

9    ***is not immediately restrained***.  Chen Decl., ¶ 28, Ex. K.  Additionally, ArcSoft believes that

10   some of the proprietary information that was stored on Friedman's laptop was the only copy

11   thereof, meaning that if Friedman is not ordered to preserve and return any and all copies he made

12   of the data, it may be lost to ArcSoft forever.  Chen Decl., ¶ 29; Adion Decl., ¶¶ 15-16; Curtis

13   Decl., ¶ 22.

14   **III.    ARGUMENT**

15          A party seeking preliminary injunctive relief must fulfill either of two standards; the

16   "traditional" or the "alternative."  Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987).  Under the

17   traditional standard, the Court may issue preliminary injunctive relief if it finds that "(1) the

18   moving party will suffer irreparable injury if the relief is denied; (2) the moving party will

19   probably prevail on the merits; (3) the balance of potential harm favors the moving party; and

20   (4) the public interest favors granting relief."  Id. In fact, under the alternative standard, even if

21   irreparable injury is only a mere possibility, the moving party may prevail if it can demonstrate "a

22   likelihood of success on the merits and the possibility of irreparable injury."  Sega Enterprises Ltd.

23   v. Accolade, Inc., 977 F.2d 1510, 1517 (9th Cir.1992) (citations omitted).  The existence of these

24   two standards is intended to reflect a sliding scale approach, namely, that as the likelihood of

25   irreparable harm exists, the need to establish a probability of success decreases.  Roe v. Anderson,

26   134 F.3d 1400, 1402 (9th Cir. 1998) (citation omitted).  Since ArcSoft can establish a strong

27   likelihood of success on the merits, and the fact of irreparable injury if the requested relief does

28   not issue, there is ample factual and legal basis to support this application.

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
EVID. PRESERV. ORDER, OSC RE: ISSUANCE
OF PRELIM. INJ. EXPED. DISC.

**A.    There Is A Strong Likelihood That ArcSoft Will Succeed On The Merits Of Its Complaint**

Friedman's conduct, including his blatant theft of ArcSoft's Stolen Laptop as "leverage" and his subsequent efforts to destroy ArcSoft's proprietary data, gives rise to multiple causes of action:

**1.    Friedman Must Be Immediately Enjoined To Prevent Any Further Violations Of The Computer Fraud And Abuse Act**

The Computer Fraud and Abuse Act ("CFAA") prohibits any or all of the following:

- Knowingly causing the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causing damage without authorization, to a protected computer (meaning one used in interstate commerce);

- Intentionally accessing a protected computer without authorization and, whether intentionally, recklessly, or otherwise, causing damage; and/or

- Knowingly and with the intent to defraud, accessing a protected computer without authorization, or exceeding authorized access, and by means of such conduct furthering the intended fraud and obtaining anything of value.

18 U.S.C. §§ 1030 (a)(4), (a)(5)(A)(i), (a)(5)(A)(ii), (a)(5)(A)(iii); Pac. Aero. & Elecs., Inc. v. Taylor, 295 F. Supp. 2d 1188, 1195 (D. Wash. 2003).

Where such unlawful acts occur, the victims are afforded a private right of action, and may seek compensatory damages and injunctive relief.  18 U.S.C. 1030(g) ("Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief").

Courts have explicitly recognized that the transmission of an erasure program to a computer constitutes a violation of the CFAA, regardless of whether the program is downloaded from the Internet or from a disc. International Airport Centers, LLC v. Citrin, 440 F.3d 418 (7th Cir. 2006).  In International Airport Centers, Judge Posner issued an opinion on behalf of the Seventh Circuit Court of Appeals recognizing that using a software erasure program – regardless of how it reaches the computer – constitutes an illegal "transmission" under the Act. Id. at 420 ("Congress was concerned with both types of attack: attacks by virus and worm writers, on the one hand, which come mainly from the outside, and *attacks by disgruntled programmers who*

1    *decide to trash the employer's data system on the way out...* on the other") (emphasis added). As

2    long as the data is destroyed, a violation of the CFAA occurs, regardless of the exact nature of the

3    deleting transmission. Id.; see also Leon v. IDX Systems Corporation, 464 F.3d 951, 956-957 (9th

4    Cir. 2006) (responding to the defendant's intentional deletion of files and other data from a laptop

5    computer – i.e. facts identical to the instant case – the court found: "[b]ecause of Dr. Leon's

6    actions there is no way of knowing what might have been stored on the laptop's hard-drive and no

7    reliable way of recreating what might have been there," the company whose computer was

8    destroyed suffered "severe prejudice" and that a finding of "bad faith" was warranted).

9    　　　Based on the evidence already gathered, it is clearly that Friedman violated each of the

10   above prohibitions contained in the CFAA. Specifically:

11   　　　**Unlawful transmission:** Forensic analysis performed by third party expert Aon

12   Consulting already demonstrates that, within only one day after Berryman observed Friedman

13   using the Stolen Laptop (indicating that it was in working condition), and after Friedman used the

14   Stolen Laptop to attempt to hack into ArcSoft's computer systems, Friedman transmitted to the

15   Stolen Laptop a professional data erasing program, which he then used to intentionally wipe the

16   entire contents of the Stolen Laptop, causing ArcSoft to suffer damage in the form of a destroyed

17   computer and the loss of all proprietary data contained therein. Curtis Decl., ¶ 16-20; Berryman

18   Decl., ¶ 16; Adion Decl., ¶¶ 3, 15-16, Ex. A; Chen Decl., ¶ 29; 18 U.S.C. § 1030(a)(5)(A)(i);

19   International Airport Centers, LLC, 440 F.3d at 420.

20   　　　**Unlawful access:** The evidence further demonstrates that Friedman accessed the Stolen

21   Laptop and, despite being repeatedly told to return the Stolen Laptop immediately and to refrain

22   from any action which would damage any proprietary information contained therein,

23   subsequently used this unauthorized access to intentionally destroy the contents of the Stolen

24   Computer and all proprietary data contained in it. By doing so, and with what could only be

25   construed to be the intent to harm and defraud ArcSoft, Friedman very likely destroyed the only

26   copy in existence of ArcSoft proprietary data (absent any copies he made before engaging in this

27   data destruction), and evidence of what files in particular he accessed and copied off of the laptop

28   (the justification he gave to law enforcement for why he unlawfully retained the laptop) causing

1    severe damage and irreparable harm to ArcSoft. 18 U.S.C. §§ 1030 (a)(4), (a)(5)(A)(ii),

2    (a)(5)(A)(iii); Pac. Aero. & Elecs., Inc., 295 F. Supp. 2d at 1195.

3        In short, a wealth of evidence demonstrates that ArcSoft is certain to prevail on the merits

4    of its CFAA claim, and thus injunctive relief is warranted. Cassim, 824 F.2d at 795; Sega

5    Enterprises Ltd., 977 F.2d at 1517; Roe, 134 F.3d at 1402.

6        2.    **Friedman Must Be Immediately Enjoined, As He Has Violated
               California Penal Code Section 502**

7

8        Similar to the federal Computer Fraud and Abuse Act, California Penal Code section 502

9    provides a civil remedy (enabling the aggrieved party to seek compensatory damages, injunctive

10   relief, or any other equitable relief) to any owner of a computer, computer system, computer

11   network, computer program, or computer data who suffers damage or loss by reason of any of the

12   following:

13        (1) Knowingly accessing and without permission *altering,
          damaging, deleting, destroying, or otherwise using* any data,
14        computer, computer system, or computer network in order to
          wrongfully control or obtain money, property, or data.

15
          (2) Knowingly accessing and without permission *taking, copying,
16        or making use of any data* from a computer, computer system, or
          computer network, or taking or copying any supporting
17        documentation, whether existing or residing internal or external to
          a computer, computer system, or computer network.

18
          (4) Knowingly accessing and without permission *adding, altering,
19        damaging, deleting, or destroying* any data, computer software, or
          computer programs which reside or exist internal or external to a
20        computer, computer system, or computer network.

21        (5) Knowingly and without permission *disrupting or causing the
          disruption of computer services or denying or causing the denial
22        of computer services* to an authorized user of a computer,
          computer system, or computer network.

23
          (7) Knowingly and without permission *accessing or causing to be
24        accessed* any computer, computer system, or computer network.

25        (8) Knowingly *introducing any computer contaminant* into any
          computer, computer system, or computer network.

26

27   Cal. Penal Code § 502(c)(1), (2), (4), (5), (7), (8); Iconix, Inc. v. Tokuda, 457 F. Supp. 2d 969,

28   996 (D. Cal. 2006); Therapeutic Research Faculty v. NBTY, Inc., 2007 U.S. Dist. LEXIS 8147,

-17-      ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
                                                                                EVID. PRESERV. ORDER, OSC RE: ISSUANCE
                                                                                OF PRELIM. INJ. EXPED. DISC.

1  17-18 (D. Cal. 2007)

2       As set forth above, by stealing ArcSoft's Laptop, retaining it for twenty-nine hours, using

3  it to attempt to hack into ArcSoft's computer network, accessing filed with the stated intent of

4  removing data off of the computer, and ultimately accessing it for the purpose of introducing a

5  contaminating and destructive data erasing program, Friedman violated each of the above

6  provisions – i.e., he <u>accessed</u> the computer, <u>added</u> computer software (i.e. the erasing program),

7  and then <u>altered</u>, <u>damaged</u>, <u>deleted</u>, and <u>destroyed</u> the Laptop and all proprietary data contained in

8  the Laptop, thereby <u>disrupting</u> ArcSoft's ability to access the Laptop and all data contained

9  therein.  Furthermore, the evidence is clear that Friedman engaged in this unlawful conduct for

10  the express purpose of <u>wrongfully obtaining money</u> (i.e. to use the computer as "leverage" to

11  acquire two years' severance), causing ArcSoft to suffer the loss of valuable proprietary data that

12  it now has no way to recover, and as is likely the case, to copy and retain ArcSoft's proprietary

13  data for his own benefit and personal enrichment.  <u>Id.</u>; Berryman Decl., ¶ 28; Chen Decl., ¶ 29;

14  Curtis Decl, ¶ 16-20, 22; Adion Decl., ¶ 3, 15-16, Ex. A.

15       Absent injunctive relief, Friedman will be free to continue altering, damaging, deleting,

16  and destroying the only remaining evidence of his unlawful conduct.  Injunctive relief is therefore

17  needed.

18       **3.    Friedman Must Be Immediately Enjoined, As He Has Already**
        **Engaged In Conversion And Threatens To Do So In The Future**
19

20       Conversion is the wrongful exercise of dominion over the property of another.  To prove

21  conversion, the plaintiff need only show (1) its ownership or right to possession of the property;

22  (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3)

23  damages.  <u>Burlesci v. Petersen</u>, 68 Cal. App. 4th 1062, 1066 (1998).  Where the plaintiff can

24  demonstrate the elements of conversion, strict liability attaches, and the court may immediately

25  issue injunctive relief.  <u>Id.</u>; <u>see also</u> <u>Gladstone v. Hillel</u>, 203 Cal. App. 3d 977, 989 (1988) (court

26  has power to order injunctive relief relating to conversion claim).

27       As demonstrated more fully above, Friedman possessed the Stolen Laptop for twenty-nine

28  hours, and continually engaged in tactics designed to delay the return of the computer, enable him

Case No. C07-03512 SC

-18-

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
EVID. PRESERV. ORDER, OSC RE: ISSUANCE
OF PRELIM. INJ. EXPED. DISC.

1  to access and by his own admission, presumably copy and remove (and/or attempt to copy and

2  remove) the information on both the Laptop and the computer system to which it was networked,

3  and to intentionally create a false record suggesting that he had returned the Laptop without

4  accessing, deleting, or destroying any proprietary data contained therein. Berryman Decl., ¶¶ 33,

5  37-39; Chen Decl., ¶¶ 6-11; Adion Decl., ¶ 3, Ex. A.  These actions, combined with his continued

6  refusal to confirm what information he copied or forward to an external storage device, whether

7  or not he is still in possession of any ArcSoft data, or answer any questions regarding what use he

8  made of the computer while he wrongfully possessed it, strongly demonstrates that Friedman is

9  still in possession of ArcSoft data and/or other ArcSoft property.  As established above, Friedman

10  has no right to possess this property, and ArcSoft – who, despite multiple efforts by it and the

11  local police, cannot recover the property Friedman retained except through injunctive relief, will

12  suffer irreparable harm if its proprietary data is not recovered.  Chen Decl., ¶ 29; Adion Decl, ¶¶

13  15-16.

14       As ArcSoft is likely to succeed on the merits of its conversion claim, and to prevent any

15  further irreparable harm to ArcSoft resulting from the loss of its property, injunctive relief is

16  therefore necessary. Burlesci, 68 Cal. App. 4th at 1066; Gladstone, 203 Cal. App. 3d at 989.

17  **B.     ArcSoft Will Suffer Irreparable Harm If Friedman Is Not Immediately Enjoined**

18

19       Finally, the balance of hardships weighs exclusively in favor of granting injunctive relief

20  to ArcSoft. Quite simply, **Friedman refused five separate requests to confirm he wasn't in**

21  **possession of ArcSoft data.** He breached his contractual obligations, falsely stated that he

22  needed to keep the Stolen Laptop to remove his personal items (an excuse which did not ring true

23  when he refused ArcSoft's offer to help him do just that), and ultimately wiped all data and

24  evidence of what ArcSoft data he accessed and copied.  Friedman's multi-fold refusal to confirm

25  – after all of this misconduct – that he was not in possession of ArcSoft data can only be

26  construed to give rise to an inference that he continues to possess ArcSoft proprietary data.

27  Obtaining confirmation of what ArcSoft data he possesses, in what medium, and prohibiting

28  access or use is critical at this stage of the proceedings, especially where intentional destruction

1   has already occurred. Absent such relief, it is probable such data and evidence will be lost

2   forever, and that the lack of injunctive relief will further enable Friedman to surreptitiously retain

3   and use ArcSoft's stolen data. At minimum, Friedman's unclean hands dictate that equitable and

4   immediate relief issue to protect the victim of his ongoing criminal activity from the effects of

5   further irreparable harm.

6         **C.**     **Friedman Will Suffer Little Or No Interim Harm If A TRO Is Issued**

7         By way of contrast, Friedman has no ownership interest, claim, or right to the information

8   contained on the Laptop before he erased it, and which he presumably still possesses. This is

9   especially true since Friedman agreed in writing to protect ArcSoft's confidential and proprietary

10   information and not to use, disclose, or retain such information after the termination of his

11   employment with ArcSoft. As Friedman has no right to possess, much less use, copy, and/or

12   disclose, ArcSoft's proprietary information, he cannot be harmed by the issuance of injunctive

13   relief requiring him to return and not access, use, or disclose such information. Further, the

14   requirement that he declare under oath what Electronic Storage Devices he possesses, and to

15   produce them to a third party for forensic imaging and preservation, is not only warranted but

16   absolutely critical in a situation where the defendant has already willfully destroyed evidence

17   after specifically being cautioned not to do so.

18   **IV.**   **COURT INTERVENTION IS ALSO REQUIRED TO PREVENT THE**
           **DESTRUCTION OF ESSENTIAL EVIDENCE**

19

20         The preservation (and ultimately the search of) all computers, USB Flash Drives, external

21   hard drives, other portable storage media, emails, and other documents (electronic or otherwise)

22   is essential. Although ample evidence of Friedman's misdeeds and destruction of ArcSoft

23   property already exists, an evidence preservation order (combined with ArcSoft's request for

24   expedited discovery, set forth below) will ensure that the evidence necessary to reveal the full

25   extent of Friedman's misconduct and the resulting irreparable harm to ArcSoft is not destroyed.

26         Moreover, time is of the essence. Without a Court order forbidding him from doing so,

27   Friedman could easily do exactly what he has already proven willing and able to do – dispose of,

28   modify, alter, or erase documents (electronic and otherwise) which further prove Friedman's theft

-20-

ARCSOFT INC.'S *EX PARTE* APPL. FOR TRO,
EVID. PRESERV. ORDER, OSC RE: ISSUANCE
OF PRELIM. INJ. EXPED. DISC.

1 and destruction of ArcSoft's proprietary information, violations of the Computer Fraud and

2 Abuse Act and California Penal Code Section 502, conversion, and related wrongs. Court

3 intervention is therefore necessary to ensure that Friedman does not have the means or

4 opportunity to further destroy evidence of his wrongdoing.

5 The ease with which thousands of pages of electronic information can be permanently

6 destroyed further supports the need for Court intervention. As the technically savvy Computer

7 Scientist Friedman has already demonstrated, with just a few keystrokes or clicks of a mouse, a

8 person seeking to hide incriminating information can permanently delete significant amounts of

9 information. In view of the fragile existence of computerized data and the ease with which such

10 data can be preserved (by copying it), it is essential that the Court order all evidence relating to

11 Friedman's misdeeds be preserved. Curtis Decl., ¶ 22.

12 In contrast, Friedman will suffer no harm from an evidence preservation order. Friedman

13 need only produce his computer and external storage media for a short time so that ArcSoft's

14 forensic expert can mirror and return them. This process causes no harm to such storage media

15 and merely maintains the status quo rather than altering any data. Curtis Decl., ¶ 25. Thus, the

16 only impact of issuing an evidence preservation order is that Friedman would be inconvenienced

17 by not being able to use his computers, floppy disks, USB Flash Drive, and other storage systems

18 for only a few hours at most. Id. This inconvenience on Friedman's part is warranted in light of

19 his outright theft and destruction of ArcSoft's property. See Heller v. New York, 413 U.S. 483 ,

20 492 (1972) (court permitted seizure of films to preserve the evidence where there was no

21 indication that such seizure would prevent the continuing exhibition of the film.)

22 **V. EXPEDITED DISCOVERY IS NECESSARY TO REVEAL THE FULL EXTENT OF FRIEDMAN'S UNLAWFUL CONDUCT AND THE IRREPARABLE HARM**

23 **ARCSOFT SUFFERED AND CONTINUES TO SUFFER**

24 ArcSoft requests leave of the Court to conduct expedited discovery in the form of 15

25 Specially Prepared Interrogatories, 15 Requests for Production of Documents, and the deposition

26 of Friedman, as set forth in the Proposed Order filed herewith. Furthermore, ArcSoft requests

27 that the Court authorize it to inspect the computers, electronic storage devices, and personal email

28 accounts in Friedman's possession, custody, or control, subject to appropriate protocol designed

1  to protect the integrity of any private information of Friedman, so that ArcSoft can verify the full

2  extent to which Friedman copied, used, forwarded, and/or disclosed ArcSoft's proprietary

3  information. Following the completion of this expedited discovery, ArcSoft may also request

4  permission to conduct reasonable follow-up discovery.

5       Good cause exists to allow ArcSoft to conduct limited expedited discovery in this matter.

6  As set forth above, injunctive relief are the only forms of relief capable of preventing or

7  minimizing any further irreparable harm to ArcSoft. ArcSoft must take limited discovery from

8  Friedman in order to obtain and preserve the evidence that is relevant to the preliminary and

9  permanent proceedings, and to determine the full extent of the damage it has suffered. Therefore,

10 ArcSoft respectfully requests that the Court authorize it to take the limited, expedited discovery

11 referenced above.

12 **VI.    CONCLUSION**

13      For all the reasons stated above, ArcSoft urges the Court to enter an order consistent with

14 the Proposed Order filed herewith and to order Friedman to show cause why a preliminary

15 injunction of like effect should not be granted.

16 DATED: July 6, 2007         PAUL, HASTINGS, JANOFSKY & WALKER LLP
                        BRADFORD K. NEWMAN

17                         SHANNON S. SEVEY

18

19

20                         By: _____
                             BRADFORD K. NEWMAN

21                         Attorneys for Plaintiff
                        ARCSOFT INC.

22

23

24

25

26

27

28