1  BRADFORD K. NEWMAN (SB# 178902) bradfordnewman@paulhastings.com
   SHANNON S. SEVEY (SB# 229319) shannonsevey@paulhastings.com
2  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   Five Palo Alto Square
   Sixth Floor
3  Palo Alto, CA 94306-2155
   Telephone: (650) 320-1800
4  Facsimile: (650) 320-1900

5  Attorneys for Plaintiff
   ARCSOFT INC.
6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9                      SAN FRANCISCO DIVISION

10

11

12  ARCSOFT INC.,                        CASE NO. C07-03512 SC

13              Plaintiff,               **ARCSOFT INC.'S MEMORANDUM IN
                                         SUPPORT OF:**
14      vs.
                                         **1. APPLICATION FOR ORDER
15  PAUL FRIEDMAN,                       GRANTING PRELIMINARY
                                         INJUNCTION**
16              Defendant.
                                         **AND *EX PARTE* APPLICATION FOR**
17
                                         **2. SEIZURE OF EVIDENCE**
18
                                         **3. CONTINUED EVIDENCE
19                                       PRESERVATION ORDER**

20                                       **4. EXPEDITED DISCOVERY**

21                                       **5. SANCTIONS**

22                                       **6. AN ORDER FINDING FRIEDMAN TO
                                         BE IN CIVIL CONTEMPT OF COURT OR
23                                       IN THE ALTERNATIVE, ISSUANCE OF
                                         AN OSC RE CONTEMPT; AND**
24
                                         **7. FOR FURTHER SANCTIONS AND
25                                       PROCEEDINGS AS THE COURT DEEMS
                                         APPROPRIATE**
26

27

28
                                         MEMO RE PRELIM. INJ., EX PARTE
                                         APP. FOR SANCTIONS/CONTEMPT
    Case No. C07-03512 SC

# TABLE OF CONTENTS

EX PARTE APPLICATION...........................................................................1

I.      INTRODUCTION.............................................................................5

II.     FACTUAL BACKGROUND................................................................6

        A.      After Being Served With The Court's Order, Friedman Produces Some – Not
                All – Electronic Storage Devices, And Otherwise Demonstrates He Does Not
                Intend To Comply With His Court-Ordered Obligations.......................6

        The Events of July 9, 2007.....................................................................7

        The Events of July 10, 2007..............................................................8

III.    LEGAL ARGUMENT......................................................................12

        A.      The Court Should Issue An Order Instructing the United States Marshall To
                Immediately Seize All ESDs In Friedman's Possession, Custody Or Control
                To Prevent Further Irreparable Harm To ArcSoft.............................12

        B.      The Court Should Issue A Preliminary Injunction Consistent With The
                Temporary Restraining Order.......................................................13

        C.      Friedman Should Be Held In Civil Contempt And Sanctioned For His Refusal
                To Comply With The Temporary Restraining Order...........................15

                1.      The Court Should Use Its Inherent Authority To Sanction Friedman
                        For His Failure To Comply With The Court's Order.................15

                2.      In The Alternative, The Court Should Issue An Order To Show Cause
                        As To Why Friedman Should Not Be Held In Civil Contempt......17

                3.      Friedman Has No Excuse For His Contempt Of The Court's
                        Order.........................................................................17

                        a.      Friedman Has Not Substantially Complied With The Court's
                                Order...............................................................17

                        b.      Friedman's Violation of The Court Order Was And Continues
                                To Be Willful And Knowing.......................................18

                        c.      Friedman Has Acted In Bad – Not Good – Faith.............18

                        d.      Friedman Is Able To Comply With The Court Order And
                                Cannot Meet The Standard For Impossibility.................19

        D.      The Court Should Consider Other Sanctions and Further Proceedings As It
                Deems Appropriate....................................................................20

        E.      The Court Should Order The Return Of ArcSoft's Bond....................20

IV.     CONCLUSION..............................................................................21

1

2

3

## **TABLE OF AUTHORITIES**

### **CASES**

4

5

Affordable Media, LLC
79 F3d at 1239……………………………………………………………………15, 19

AT&T Broadband v. Tech Communs., Inc.
381 F.3d 1309 (11th Cir. 2004)……………………………………………………12, 13

6

7

8

Burlesci v. Petersen
68 Cal. App. 4th 1062 (1998)……………………………………………………………14

Cassim v. Bowen
824 F.2d 791 (9th Cir. 1987)…………………………………………………...13, 15

9

10

11

Chicago Truck Drivers v. Brotherhood Labor Leasing
207 F3d 500 (8th Cir. 2000)……………………………………………………......19

Citizens for Better Environment v. Elm Grove
472 F.Supp. 1183 (E.D. Wis. 1979)… ……………………………………….…....20

12

13

14

F.T.C. v. Affordable Media
179 F.3d 1228 (9th Cir. 1999) …………………………………….…. 13, 15, 19

FTC v. U.S. Oil & Gas Corp.
748 F.2d 1431 (11th Cir. 1984)… ………………………………………….……..13

15

16

17

Gladstone v. Hillel
203 Cal. App. 3d 977 (1988)… …………………………………………….……..14

In re Crystal Palace Gambling Hall, Inc.
817 F.2d 1361 (9th Cir. 1987) …………………………………….……..15, 18

18

19

20

In re Dual-Deck Video Cassette Recorder Antitrust Litig.
10 F. 3d 693 (9th Cir. 1993)… …………………………………….……..l7, 18

Int'l Union v. Bagwell
512 U.S. 821 (1994)…………… ………………………………………….……..12

21

22

23

John Roe, Inc. v. United States
142 F.3d 1416 (11th Cir. 1998)… ……………………………………….……..17

John T. v. Delaware County Intermediate Unit
318 F.3d 545 (3d Cir. 2003)… ……………………………………….……..16

24

25

26

Matek v. Murat
862 F.2d 720 (9th Cir. 1988) ……………………………………….……..19

McComb v. Jacksonville Paper Co.
336 U.S. 187 (1949)… ………………………………………….……..16, 18

27

28

Roe v. Anderson
134 F.3d 1400 (9th Cir. 1998)………… ..............................................................14, 15

Sega Enterprises Ltd. v. Accolade, Inc.
977 F.2d 1510 (9th Cir.1992)………… ..............................................................14, 15

U.S. v. City of Jackson
359 F.3d 727 (5th Cir. 2004)… ..............................................................……….15

Weitzman v. Stein
98 F.3d 717 (2nd Cir. 1996)… ..............................................................……….15

## **STATUTES**

18 U.S.C. 1030(g) ..............................................................……………………14

Cal. Penal Code § 502(e) ..............................................................……………….14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## *EX PARTE* APPLICATION

Pursuant to Federal Rule of Civil Procedure 65 and Northern District Local Rule 65-2, Plaintiff ArcSoft Inc. ("ArcSoft") hereby applies *ex parte* for an Order Re: Seizure Of Evidence, Continued Evidence Preservation, Expedited Discovery, Sanctions for Civil Contempt of TRO, and Further Sanctions and Proceedings as the Court Deems Appropriate), as set forth in the Proposed Order filed herewith.  ArcSoft also submits the accompanying brief in support of the previously noticed Application for Preliminary Injunction, set for hearing by the Court on July 13, 2007.

**I.    Basis of Application For Preliminary Injunction And Relief Sought**

ArcSoft applies for this relief on the grounds that:

1.    On July 6, 2007, the Court issued a Temporary Restraining Order, Evidence Preservation Order, and Order to Show Cause Regarding Issuance of Preliminary Injunction (the "TRO")which restrained Friedman from accessing any ArcSoft data, required him to make certain certifications under penalty of perjury, and within three calendar days, to (i) return all ArcSoft data; and (ii) disclose under oath and produce for forensic imaging all Electronic Storage Devices in his possession, custody and control;

2.    After being personally served with the TRO and all pleadings filed in this action on July 6, 2007, and in willful violation of the TRO, Friedman:

a.    caused the unavailability and/or altering or destruction of the contents of Electronic Storage Devices and/or the data contained therein (including, on Saturday July 7, 2007, personally sending a computer governed by the Order to Hewlett Packard under the guise that it had a "power problem" that for unexplained reasons needed to be fixed *post haste*;

b.    refused to describe under penalty of perjury, as mandated by the TRO, how he "defragmented" the ArcSoft laptop computer during the time it was in his possession;

c.    refused to describe under penalty of perjury, as mandated by the TRO, his own access to the ArcSoft data he possessed following the termination of his employment, and failed to identify under penalty of perjury the access he provided to others;

-1-

MEMO RE PRELIM. INJ., EX PARTE
APP. FOR SANCTIONS/CONTEMPT

1      d.   connected an External Storage Device containing ArcSoft data to a computer to

2  which he had access and attempted to access ArcSoft data;

3      e.   admitted that he possesses additional Electronic Storage Devices which he

4  affirmatively refused to produce for forensic imaging;

5      f.   delayed, in material respects, granting access to his personal email account which

6  he admits contains ArcSoft data, to allow the Court-ordered forensic imaging.

7      Friedman's actions and statements since being served with the Court's TRO on July 6,

8  2007 demonstrate a disregard for the seriousness of his actions and the consequences for violating

9  the Court's Order.  Friedman, a seasoned sales executive with a degree in Computer Science, has

10  engaged in a course of conduct over the last seven days designed to flout the letter and spirit of

11  the TRO, and has continued to pursue the very conduct which the Court has enjoined – all to the

12  detriment of ArcSoft.  Friedman's actions are deeply troubling, and warrant close scrutiny by the

13  Court.

14      3.   Friedman should be preliminarily enjoined not only because he has willfully failed

15  to comply with and expressly violated the TRO, but also because ArcSoft continues to face the

16  threat of the following imminent and irreparable injury:

17      a.   that further relevant evidence, including ArcSoft data, will be lost or destroyed;

18      b.   that unauthorized third parties, including Friedman, will enjoy unauthorized access

19  to and use of ArcSoft technical, business and related data and information that these parties have

20  no lawful right to possess;

21      c.   that ArcSoft customer data may be compromised, which in turn, threatens to

22  irreparably harm ArcSoft's customer relationships and its business;

23      d.   that ArcSoft will lose the ability to utilize data and information deleted off of the

24  laptop but which Friedman has cached and/or has the ability to help ArcSoft recover;

25      e.   that with the passage of time, ArcSoft's chances of successfully recovering the

26  data at issue is lessened based on various factors, including diminishing witnesses memories, the

27  chance that data which may have been copied will be hidden or disposed of, and the fact that from

28

1  a technological perspective, electronic data and the preservation of the same is subject to many

2  human and machine perils.

3      ArcSoft therefore applies for preliminary injunctive relief in the form of an Order that

4  through the resolution of trial in this matter, preliminary enjoins Friedman as follows:

5      (1)    restrains Friedman from accessing, using, or disclosing to anyone any confidential

6  and/or proprietary information of ArcSoft that is in his current possession, custody, or control,

7  and/or that he retained after being terminated by ArcSoft;

8      (2)    requires Friedman to return to counsel for ArcSoft all information, data, or

9  documents in his possession, custody, or control that he accessed or acquired, in whole or in part,

10  in connection with his employment with ArcSoft, including, without limitation, the electronic

11  data identified pursuant to the TRO;

12      (3)    requires Friedman to identify under penalty of perjury each and every file and

13  piece of electronic data (by name, hash marks, and any other identifying means) he accessed,

14  removed, and/or copied from the ArcSoft laptop he retained following the termination of his

15  employment, as well as the current location of all such data;

16      (4)    requires  Friedman to identify under penalty of perjury and with specificity

17  (including the name of the program, the manufacturer, and the version number) the particular type

18  of wiping program he used to delete data off of the ArcSoft laptop, at what precise date and time

19  he used this wiping program, and the precise steps he took to execute the program's deletion

20  function;

21      (5)    requires Friedman to identify under penalty of perjury all Electronic Storage

22  Devices (including but not limited to home computers, thumb drives, compact discs or DVDs,

23  hard drives, private email accounts (including Internet-based email accounts), and other media

24  capable of storing electronic data) in his possession, custody and control and/or to which he has

25  access at any point from January 1, 2007 to the present, and make such Electronic Storage

26  Devices available to a third party forensic expert for ArcSoft, so that the third party expert can

27  forensically image and preserve the data on these Electronic Storage Devices for later inspection

28  through the discovery process; and

-3-

MEMO RE PRELIM. INJ., EX PARTE
APP. FOR SANCTIONS/CONTEMPT

1    (6)    requires Friedman to identify under penalty of perjury (A) all persons (including

2    himself and any attorney, whether or not such attorney be an immediate family member or

3    relative) who have been given access to any ArcSoft property, (B) when such access occurred,

4    and (C) what use was made of such data by the identified persons.

5    **II.    Order Authorizing Seizure Of Electronic Storage Devices**

6    Based on Friedman's actions following personal service on him of the TRO, ArcSoft also

7    applies for an Order instructing the Federal Marshall to immediately seize from Friedman all

8    Electronic Storage Devices in Friedman's possession, custody, or control and produce them to the

9    third party forensic expert retained by ArcSoft for forensic imaging.

10   **III.    Order Granting Sanctions And OSC Re Contempt And Referral**

11   .    ArcSoft further applies for an Order granting compensatory sanctions in the amount of

12   $13,970 against Friedman, payable to ArcSoft, for his intentional violation of the TRO and to

13   compensate ArcSoft for the cost of bringing this Application, sanctions in the amount of $3,500

14   per day thereafter, payable to the Court, until Friedman is in full compliance with the Court's

15   Order (or, in the alternative, an Order to Show Cause regarding a finding of contempt of Court);

16   and for further sanctions and/or fines as the Court deems appropriate as a punishment for

17   violation of the Court's Order and as a deterrent against future violations.

18   **IV.    Evidence Preservation Order**

19   In order to ensure that ArcSoft's data and key evidence is not destroyed prior to final

20   adjudication or other resolution of this action, ArcSoft requests the Court issue an order:

21   (1)    That Friedman be restrained and prohibited from destroying, altering, erasing, or

22   otherwise modifying, or causing or permitting anyone else to destroy, alter, erase, or otherwise

23   modify, any evidence relating to this action, including, but not limited to:

24   a.    any and all data in computerized files stored or located on computers, USB drives,

25   external hard drives, or any other external storage device or email account within the possession,

26   custody or control of Friedman, including, without limitation, any and all documents relating to

27   ArcSoft and/or its confidential and/or proprietary information;

28   b.    any and all documents maintained in hard copy, paper form relating to ArcSoft

1    and/or its confidential and/or proprietary information; and

2              c.   any and all computers, floppy diskettes, USB Flash Drives, external hard drives, or

3    other external storage devices within the possession, custody or control of Friedman.

4    **V.    Expedited Discovery**

5         In light of Friedman's conduct since being served with the TRO, and to ensure that all

6    ArcSoft data in Friedman's possession and/or control is accounted for, ArcSoft requests that the

7    Court issue an Order permitting it to issue fifteen (15) special interrogatories and fifteen (15)

8    document requests, and requiring Friedman to provide full, complete, and FRCP-compliant

9    written responses to this discovery, and to produce all documents that are responsive to ArcSoft's

10   document requests, within seven (7) calendar days.  ArcSoft also requests that the Court permit it

11   to take the deposition of Friedman on an expedited basis.

12   **VI.    Return of Bond**

13        ArcSoft also requests the return of the $25,000 bond it posted in furtherance of the

14   Temporary Restraining Order now in effect, in light of the clear evidence that such order was

15   justified and obtained properly and Friedman's own conduct since being served with TRO.

16        This *Ex Parte* Application is based on this Application, the Memorandum of Points and

17   Authorities in support thereof, the Declarations of Shannon S. Sevey and Michael Boggess filed

18   concurrently herewith (and the exhibits thereto), the Proposed Order filed herewith, and such

19   further papers, evidence, and arguments on file with the Court and/or as may be submitted to the

20   Court.

21        <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

22   **I.    INTRODUCTION**

23        Upon being personally served with the TRO on July 6, 2007, Friedman violated – in

24   purposeful fashion – the Order in several ways, including: (1) refusing to declare under penalty of

25   perjury and produce all Electronic Storage Devices ("ESDs") for Court-ordered forensic imaging;

26   (2) on the Saturday after being served with the TRO, sending one of his computers to Hewlett

27   Packard for "repairs," purportedly because it had a "power problem"; (3) refusing to make Court-

28   ordered certifications under penalty of perjury (as opposed to his self-created statement, which is

1    incomplete, contains several limiting caveats, and is equivocally sworn "to the best of [his]

2    knowledge" without the words "under penalty of perjury", (4) delaying in allowing access to his

3    personal email account which he admits contains ArcSoft stored data and (5) attempting to

4    purposely misconstrue the plain language of the Court's Order in an attempt to create an excuse

5    for his failure to comply with it.

6         These tactics, which continue to prevent ArcSoft from recovering all of its stolen data and

7    which further prevent evidence from being preserved, demonstrate the merit of this Application

8    and ArcSoft's Application for Temporary Restraining Order, the imminent risk of irreparable

9    harm to ArcSoft and the need for preliminary and permanent injunctive relief.  Friedman's

10   conduct also constitutes a direct violation of the Court's Order, warranting the imposition of

11   severe monetary sanctions, a finding of contempt of Court, return of the $25,000 bond posted by

12   ArcSoft in connection with the TRO proceedings, and further sanctions and proceedings as the

13   Court deems justified by the record.

14   **II.    FACTUAL BACKGROUND**

15        **A.    After Being Served With The Court's Order, Friedman Produces Some – Not
           All – Electronic Storage Devices, And Otherwise Demonstrates He Does Not
16         Intend To Comply With His Court-Ordered Obligations**

17        On July 6, 2007, the same day that the Court issued its Order, Friedman was personally

18   served with the Order, the Complaint in this lawsuit, and the papers submitted in furtherance of

19   ArcSoft's *ex parte* application for the Order.  Declaration of Shannon S. Sevey ("Sevey Decl."),

20   Ex. B.  Friedman was also served with a letter from ArcSoft's counsel requesting that Friedman

21   contact ArcSoft's counsel by 10:00 a.m. on Monday, July 9, 2007 – the date by which Friedman

22   was ordered to return all ArcSoft data, produce all Electronic Storage Devices for imaging, and

23   provide sworn certifications to ArcSoft.  Sevey Decl., Ex. A.

24        Over the ensuing weekend, while Friedman's full actions had yet to be discovered, by his

25   own admission Friedman sent one of the computers covered by the TRO to Hewlett Packard for

26   "repairs," purportedly because it had an unspecified "power problem."  Boggess Decl., ¶ 17.

27   There is no explanation, credible or otherwise, for why this computer had to be sent out for

28   repairs the day **after** Friedman was served with a TRO that required him to produce this laptop

1   for forensic imaging, and now ArcSoft is deprived of being able to have its contents forensically

2   imaged.

3       Over the weekend (and again by his own admission), Friedman also accessed Electronic

4   Storage Devices containing ArcSoft data – and accessed the ArcSoft data itself. Boggess Decl., ¶

5   22, Ex. A at ¶ (3). His explanations – in the context of his tactical decision to serve as his own

6   attorney thus far in this matter – are conflicting, deeply troubling, and conflict with the little

7   evidence about his actions gleaned to date.

8       Rather than use the weekend to comply with the Court's Order, and in addition to

9   willfully violating the terms of the Order as outlined above (and, as ArcSoft suspects, in other

10  ways yet to be fully discovered), Friedman waited until after 12:00 p.m. on July 9, 2007 – the last

11  day for compliance allowed by the Order – to first contact ArcSoft's counsel. Sevey Decl., ¶ 5.

12  **The Events of July 9, 2007**

13      Around 12:20 p.m., Friedman (representing himself despite bragging to former colleagues

14  at ArcSoft that his relatives are attorneys) left messages for ArcSoft's counsel. Sevey Decl., ¶ 5.

15      Around 1:30 p.m., ArcSoft's counsel contacted Friedman on his cell phone, and attempted

16  to schedule a meeting to allow Friedman to comply in full with the Court's Order. Sevey Decl., ¶

17  8. Friedman stated that he would not be able to produce all ESDs covered by the Order,

18  purportedly because he "did not have time" over the weekend to collect them. Sevey Decl., ¶ 15.

19  He stated that he had a "disc" of ArcSoft data that he had "backed-up" off the ArcSoft computer

20  before returning it, and agreed to produce the "disc" for imaging. Sevey Decl., ¶ 11. However,

21  he refused to appear at counsel's office until 6:00 p.m. that evening, notwithstanding the fact he

22  acknowledged that the TRO required him to be in full compliance that day. Sevey Decl., ¶ 11.

23      Around 6:40 p.m. – 40 minutes late – Friedman appeared at counsel's office. Boggess

24  Decl., ¶ 4. While the events of that meeting are recounted in detail in the accompanying

25  Declaration of Michael Boggess, Friedman did not produce the disc of ArcSoft data he

26  referenced, returned some – but not all – Electronic Storage Devices, produced a statement not

27  under penalty of perjury, and made certain verbal statements regarding the conduct in which he

28  engaged. Boggess Decl., ¶¶ 5-6, 17, 22-24, Ex. A. During the meeting, he made troubling

1   statements, stating for example, that the following day he planned to bring every Disney movie he

2   ever bought for his son in to be imaged because in his view, "Finding Nemo" is an ESD covered

3   by the TRO. Boggess Decl., ¶¶ 16-24. He also equivocated as to whether he would appear the

4   following day to allow continued forensic imaging of the ESDs he did produce. If at all, he

5   agreed to return to ArcSoft's counsel's office at 7 p.m. the following night – and not before.

6   Boggess Decl., ¶ 28.

7   **The Events of July 10, 2007**

8       At 7:00 p.m., Friedman failed to appear at ArcSoft's counsel's office. Around 7:15 p.m.,

9   ArcSoft's counsel reached Friedman on a cellular phone. Friedman refused to appear, refused to

10  produce any other Electronic Storage Devices or any certifications under penalty of perjury, or to

11  make any further attempts to comply with the Court's Order. Boggess Decl., ¶¶ 30-35.

12      The following is a summary of the statements, actions and other evidence demonstrating

13  Friedman's willful, intentional, and ongoing violations of the Court's July 6, 2007 Order, along

14  with citations to the evidentiary support.

| **Provisions Of The TRO** | **Friedman's Violation Of This Provision** |
|---|---|
| That, within three calendar days of the date of this Order, Friedman shall identify in a written statement made under penalty of perjury, (A) all persons (**including himself and any attorney, whether or not such attorney be an immediate family member or relative**) who have been given access to any ArcSoft property (including the data identified in Paragraph 3, above), (B) **when such access occurred**, and (C) **what use was made of such data by the identified persons.**<br>Order, at p. 3:10-15. | • <u>6:40 p.m. meeting on July 9, 2007; and 7:15 p.m. telephone call on July 10, 2007:</u> Friedman twice refused to comply by identifying under oath his own access to the ArcSoft data, when such access occurred, and what use was made of such data by him, and by failed to state under oath whether anyone else was provided access. Boggess Decl., ¶ 31, Ex. A, at ¶ (6) (in which Friedman only states, in response to this portion of the Court's Order, that he "did not give anyone access to any [A]rc[S]oft property or files"). |
| That, within three calendar days of the date of this Order, Friedman shall identify in a written statement made under penalty of perjury all Electronic Storage Devices (including but not limited to home computers, thumb drives, compact discs or DVDs, hard drives, private email accounts (including Internet-based email accounts), and other media capable of storing electronic data) in his possession, custody and control and/or to which he has access | • <u>6:40 p.m. meeting on July 9, 2007:</u> Friedman, who has a Computer Science degree, again feigns ignorance regarding what constitutes an ESD, this time saying he believed the Court was ordering him to identify all items such as his son's DVD of the movie "Finding Nemo," a computer printer he once used in a hotel in Shanghai, etc. Boggess Decl., ¶ 16.<br>• <u>6:40 p.m. meeting on July 9, 2007:</u> |

MEMO RE PRELIM. INJ., EX PARTE
APP. FOR SANCTIONS/CONTEMPT

| | |
|---|---|
| from January 1, 2007 to the present, and make such Electronic Storage Devices available to a third party forensic expert retained by ArcSoft, so that the third party expert can forensically image (on a byte by byte basis that includes slack and unallocated spaces of the Electronic Storage Devices) and preserve the data on these Electronic Storage Devices for later inspection through the discovery process. Order, at p. 3:1-9. | Friedman creates a list of ESDs which includes the movie, iPods, and other items he listed, and also includes his "family laptop" computer and two other laptop computers **but does not describe the make or model of these computers** as ordered by the TRO. Boggess Decl., Ex. C. Friedman acknowledges he has not produced all listed ESDs but states he will produce all such ESDs at 7:00 p.m. on July 10, 2007. Boggess Decl., ¶ 18. However, Friedman later refuses to confirm whether he will appear for this 7:00 p.m. meeting. Boggess Decl., ¶ 28.<br><br>• <u>7:15 p.m. telephone call on July 10, 2007</u>: ***Friedman refuses to meet with ArcSoft's counsel to produce his "family laptop computer" or any other ESDs other than those already produced.*** Boggess Decl., ¶ 31.[1] Friedman also refuses to answer any questions regarding when – if ever – he would produce the remaining ESDs and refuses to provide any certifications under penalty of perjury. Boggess Decl., ¶¶ 31-34. |
| That, within three calendar days of the date of this Order, Friedman shall identify in a written statement made under penalty of perjury and with specificity (including the name of the program, the manufacturer, and the version number) the particular type of wiping program he used to delete data off of the ArcSoft Laptop, at what precise date and time he used this wiping program, and the precise steps he took to execute the program's deletion function. Order, at p. 2:24-28. | • <u>6:40 p.m. meeting on July 9, 2007 and written statement prepared by Friedman and submitted to ArcSoft counsel on July 9, 2007</u>: Despite the sworn statement of a forensic expert stating that Friedman used a wiping program to erase all content from the ArcSoft laptop, Friedman – who holds a Computer Science degree—states in that he does not know what a "wiping program" is. Boggess Decl., ¶ 14, Ex. A.<br><br>• Friedman does, however, admit that he defragmented the hard drive of the ArcSoft computer which, while it does not explain the wiping of all data from the ArcSoft laptop, is an act which can cause the loss or destruction of relevant evidence. Boggess Decl., ¶ 24-25, Ex. A. **However, he refuses to describe under penalty of perjury, as mandated by the TRO, how he "defragmented" the ArcSoft** |

[1] Friedman's refusal to meet with ArcSoft's counsel on July 10 is inconsistent with the request he made on July 9, 2007 for a 24-hour extension of time to produce all ESDs under the guise that he was "searching for counsel." To date, Friedman has still not retained counsel, and in any event, under the circumstances and where he had the weekend to prepare to comply by, among other things, inventorying his ESDS – but instead violated the TRO by accessing ArcSoft data and sending a computer of unknown make and model to HP for "repairs" – his request for an extension was purely tactical and inappropriate.. Sevey Decl., ¶ 15.

MEMO RE PRELIM. INJ., EX PARTE APP. FOR SANCTIONS/CONTEMPT

| | |
|---|---|
| | **computer during the time it was unlawfully in his possession.** Boggess Decl., ¶ 31. |
| That, within three calendar days of the date of this Order, Friedman shall identify in a written statement made under penalty of perjury each and every file and piece of electronic data (by name, hash marks, and any other identifying means) he accessed, removed, and/or copied from the ArcSoft laptop he retained following the termination of his employment ("Laptop"), as well as the current location of all such data.<br><br>Order, at p. 2:19-23. | • <u>Written statement prepared by Friedman and submitted to ArcSoft counsel on July 9, 2007</u>: Friedman states he did not comply with this instruction. Boggess Decl., Ex. A, at ¶ (3) ("i am concerned that any attempt i make to list the files might be incomplete"). |
| IT IS HEREBY ORDERED:<br><br>That Defendant Paul Friedman ("Friedman"), his agents, and all those acting in aid and concert with him are immediately restrained from accessing, using, or disclosing to anyone any ArcSoft information that is in his current possession, custody, or control, and/or that he retained after being terminated by ArcSoft.<br><br>Order, at p. 2:10-14. | • <u>1:30 p.m. telephone call on July 9, 2007</u>: Friedman informs ArcSoft's counsel that he *copied ArcSoft data to a "disc" after being served with the Court Order.* Sevey Decl., ¶ 11. Friedman later changes his story, stating that he created this disc when he backed up data from the ArcSoft laptop before he returned it to ArcSoft on June 27, 2007. Sevey Decl., ¶ 12. <u>He also now claims there is no "disc" and that when he said the word "disc," he was actually referring to an external hard drive and not a disc.</u><br><br>• <u>6:40 p.m. meeting on July 9, 2007</u>: After being asked about the whereabouts of the disc which he had referenced in the 1:30 p.m. call, and proffered the alibi that when he said "disc" he meant "external hard drive," Friedman refuses to answer ArcSoft's counsel's question regarding whether he has complied with this portion of the Court Order. Boggess Decl., ¶ 12.<br><br>• <u>Written statement prepared by Friedman and submitted to ArcSoft at July 9, 2007 meeting</u>: Friedman states that, after being served with the Court Order, he *accessed the external hard drive containing ArcSoft information by connecting it to another computer* (which Friedman has not produced for forensic imaging) *and attempted to review it in violation of the Court Order* using Google Desktop and Microsoft Windows. Boggess Decl., ¶ 22, Ex. A.<br><br>• <u>Forensic evidence demonstrates Friedman accessed ArcSoft data after being served with TRO</u>: The forensic imaging of Friedman's external hard drive revealed that *Friedman accessed numerous files on the external hard drive – which Friedman acknowledges* |

| | |
|---|---|
| | *contains ArcSoft data – on July 8, 2007 – two days after Friedman received the Court Order.*  Boggess Decl., ¶ 9 (noting that the hard drive's contents note a "Last Access Date" of July 8, 2007).  Once expedited discovery is authorized, the full extent of Friedman's access of ArcSoft data in violation of the Court Order will be revealed. |
| That, within three calendar days of the date of this Order, Friedman shall return to counsel for ArcSoft all information, data, or documents in his possession, custody, or control that he accessed or acquired, in whole or in part, in connection with his employment with ArcSoft, including, **without limitation, the electronic data identified in response to Paragraph 3, below**.<br><br>Order, at p. 2:15-18. | • Friedman refuses to identify under penalty of perjury the ArcSoft data he possesses and accessed – as required by this Provision.  Boggess Decl., ¶¶ 13, 31, Ex. A.<br><br>• 1:30 p.m. telephone call on July 9, 2007:  Friedman states that he has a single "disc" which contains all ArcSoft information in his possession and which he will return at 6:00 p.m. that evening.  Boggess Decl., ¶ 11.<br><br>• 6:40 p.m. meeting on July 9, 2007:  Friedman does not produce any compact discs.  Instead, Friedman produces one external storage drive and three USB "flash" drives.  Friedman, who holds a Computer Science degree, now asserts that the single disc he identified five hours earlier actually referred to four different ESDs – none of which is a disc.  Friedman also admits he maintains ArcSoft data in his personal email account, but does not explain why he failed to mention this when he stated at 1:30 p.m. that all ArcSoft data in his possession was contained on the "disc."  Boggess Decl., ¶¶ 5, 12.<br><br>• 6:40 p.m. meeting on July 9, 2007: When asked, and despite stating at 1:30 p.m. that he would return all ArcSoft data on a "disc," Friedman first refuses to answer whether he had complied with this provision, but then insists he has returned all ArcSoft property other than the ArcSoft data in his personal email account.  Boggess Decl., ¶ 12.<br><br>• 6:40 p.m. meeting on July 9, 2007:  Friedman states he connected the external hard drive (which contains ArcSoft data) to another computer in his possession.  Boggess Decl., ¶ 12.  Further discovery will reveal whether he created a copy of the contents of the external hard drive onto this computer or otherwise still has access to the ArcSoft data contained therein. |

MEMO RE PRELIM. INJ., EX PARTE
APP. FOR SANCTIONS/CONTEMPT

| | |
|---|---|
| That Friedman be restrained, enjoined and prohibited from destroying, altering, erasing, or otherwise modifying, or causing or permitting anyone else to destroy, alter, erase, or otherwise modify, any evidence relating to this action, including, but not limited to:<br><br>(A) Any and all data in computerized files stored or located on computers, USB drives, external hard drives, or any other Electronic Storage Device or email account within the possession, custody or control of Friedman, including, without limitation, any and all documents relating to ArcSoft and/or its confidential and/or proprietary information;<br><br>(B) Any and all documents maintained in hard copy form relating to ArcSoft and/or its confidential and/or proprietary information; and<br><br>(C) Computers, floppy diskettes, USB Flash Drives, external hard drives, or other external storage devices within the possession, custody or control of Friedman.<br><br>Order, at p. 4:1-13. | • 6:40 p.m. meeting on July 9, 2007: Friedman states that, *after being served with the Court Order which requires him to preserve evidence, he sent a Hewlett Packard laptop purportedly belonging to his son (but to which he had access) to Hewlett Packard,* purportedly so that HP could fix a "power problem."  Boggess Decl., ¶ 17. |

## III.    LEGAL ARGUMENT

### A.    The Court Should Issue An Order Instructing the United States Marshall To Immediately Seize All ESDs In Friedman's Possession, Custody Or Control To Prevent Further Irreparable Harm To ArcSoft

Federal courts have broad authority to take all measures necessary to enforce their orders, including ordering the seizure of evidence subject to a court order. Int'l Union v. Bagwell, 512 U.S. 821, 831-32 (1994); (district courts have broad power to enforce their own orders); AT&T Broadband v. Tech Communs., Inc., 381 F.3d 1309, 1316 (11th Cir. 2004).  In AT&T Broadband, the plaintiff sought injunctive relief and an order permitting simultaneous evidence seizure order after learning that the defendant was engaged in selling cable pirating devices.  The Eleventh Circuit upheld the district court's *ex parte* order freezing the defendant's assets and permitting the plaintiff, with the assistance of United States Marshalls, to search the defendant's residences to seize all computer terminals, hard drives, servers, disks and tapes in defendant's possession, reasoning that a statute which provides for injunctive relief inherently also provides the authority to grant any ancillary relief necessary "to accomplish complete justice," which

Case No. C07-03512 SC

MEMO RE PRELIM. INJ., EX PARTE
APP. FOR SANCTIONS/CONTEMPT

1   includes ordering the seizure of assets. Id. at 1312, 1316; quoting FTC v. U.S. Oil & Gas Corp.,

2   748 F.2d 1431, 1432 (11th Cir. 1984).

3        Like the federal statute at issue in AT&T Broadband, the Computer Fraud and Abuse Act

4   and California Penal Code Section 502 – the statutes under which ArcSoft sought and obtained a

5   Temporary Restraining Order against Friedman – provide that courts may order injunctive relief

6   and other equitable relief. 18 U.S.C. 1030(g) ("Any person who suffers damage or loss by reason

7   of a violation of this section may maintain a civil action against the violator to obtain

8   compensatory damages and injunctive relief or other equitable relief"); California Penal Code §

9   502(e) ("In addition to any other civil remedy available, the owner or lessee of the computer,

10  computer system, computer network, computer program, or data who suffers damage or loss by

11  reason of a violation of any of the provisions of subdivision (c) may bring a civil action against

12  the violator for compensatory damages and injunctive relief or other equitable relief.")

13       Moreover, the reasoning in AT&T Broadband is even more applicable to the facts

14  presented here. Unlike the plaintiff in AT&T Broadband, ArcSoft did not immediately seek an

15  order allowing it to seize Friedman's ESDs, but rather afforded him an opportunity to voluntarily

16  comply with the clear terms of the Court's Order. Now that Friedman has refused numerous

17  requests to comply with his Court-ordered obligation to produce all ESDs and has demonstrated a

18  willingness to disregard the Court's Order (just as he disregarded the instructions of the Fremont

19  Police), the only way to preserve evidence and prevent further imminent and irreparable harm to

20  ArcSoft resulting from the destruction of ArcSoft data and other evidence is to seize all ESDs not

21  yet produced. Friedman's unapologetic defiance of the Court justifies the issuance of an order

22  instructing the United States Marshall to immediately seize all ESDs in Friedman's possession,

23  custody and control. AT&T Broadband, 381 F.3d at 1312, 1316; U.S. Oil & Gas Corp., 748 F.2d

24  at 1432.

25       **B.    The Court Should Issue A Preliminary Injunction Consistent With The**
             **Temporary Restraining Order.**

26

27       A party seeking preliminary injunctive relief must fulfill either of two standards; the

28  "traditional" or the "alternative." Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987). Under

1    the traditional standard, the Court may issue preliminary injunctive relief if it finds that "(1) the

2    moving party will suffer irreparable injury if the relief is denied; (2) the moving party will

3    probably prevail on the merits; (3) the balance of potential harm favors the moving party; and

4    (4) the public interest favors granting relief." Id. In fact, under the alternative standard, even if

5    irreparable injury is only a mere possibility, the moving party may prevail if it can demonstrate "a

6    likelihood of success on the merits and the possibility of irreparable injury." Sega Enterprises Ltd.

7    v. Accolade, Inc., 977 F.2d 1510, 1517 (9th Cir.1992) (citations omitted). The existence of these

8    two standards is intended to reflect a sliding scale approach, namely, that as the likelihood of

9    irreparable harm increases, the need to establish a probability of success decreases. Roe v.

10   Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998) (citation omitted).

11            Since the Court issued its Order to Show Cause why a preliminary injunction consistent

12   with the TRO now in effect should not be issued, Friedman has done just the opposite. Friedman

13   has admitted (and the forensic evidence establishes) that, notwithstanding the Court's clear

14   directives, he (1) accessed Electronic Storage Devices containing ArcSoft data and connected at

15   least one of them to another computer within his possession (Boggess Decl., ¶ 22), (2) attempted

16   to review such data through Google Desktop and Microsoft Windows (Boggess Decl., Ex. A);

17   caused evidence, such as the Hewlett Packard laptop which he sent to HP after being served with

18   the Court's Order, to be altered, removed, and/or destroyed (Boggess Decl., ¶ 17), (3) refused to

19   produce all ESDs in his possession, custody, and control to ArcSoft's forensic expert for imaging

20   (Boggess Decl., ¶¶ 15-18, Ex. C), and (4) refused to provide the Court-ordered certifications

21   under penalty of perjury (Boggess Decl., ¶ 31).

22            These admissions, as well as the fact that Friedman has admitted to accessing ArcSoft's

23   laptop computer and data after ArcSoft expressly instructed him not to do so (Boggess Decl., ¶¶

24   20-21, Ex. A), provide further proof that ArcSoft will succeed on the merits of its Computer

25   Fraud and Abuse Act, Penal Code, and conversion claims and that ArcSoft will suffer further

26   irreparable harm if Friedman is not immediately restrained, as set forth more fully in ArcSoft's Ex

27   Parte Application for TRO. 18 U.S.C. §§ 1030(g); Cal. Penal Code § 502(e); Burlesci v.

28   Petersen, 68 Cal. App. 4th 1062, 1066 (1998); Gladstone v. Hillel, 203 Cal. App. 3d 977, 989

1   (1988) (court has power to order injunctive relief relating to conversion claim).  Therefore, to

2   prevent further destruction of evidence, use of ArcSoft's data, or other irreparable harm to

3   ArcSoft, the Court should issue a preliminary injunction consistent with the TRO now in effect.

4   Cassim, 824 F.2d at 795; Sega Enterprises Ltd., 977 F.2d at 1517; Anderson, 134 F.3d at 1402.

5       **C.**     **Friedman Should Be Held In Civil Contempt And Sanctioned For His Refusal
    To Comply With The Temporary Restraining Order**

6

7             **1.**     **The Court Should Use Its Inherent Authority To Sanction Friedman
    For His Failure To Comply With The Court's Order**

8          Friedman's deliberate and ongoing violation of the Court Order warrants a finding of civil

9   contempt and the imposition of sanctions.  Failure to obey the terms of a temporary restraining

10  order constitutes contempt of court. Int'l Union, 512 U.S. at 831-32; In re Crystal Palace

11  Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987) ("If a person disobeys a specific and

12  definite court order, he may properly be adjudged in contempt").

13         In a civil contempt proceeding, the party seeking sanctions must establish that "(1) a court

14  order was in effect, (2) the order required specified conduct by the respondent, and (3) the

15  respondent failed to comply with the court's order." U.S. v. City of Jackson, 359 F.3d 727, 731

16  (5th Cir. 2004); see also F.T.C. v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999) ("The

17  standard for finding a party in civil contempt is well settled: The moving party has the burden of

18  showing by clear and convincing evidence that the contemnors violated a specific and definite

19  order of the court.")  A showing of willfulness is not required. Crystal Palace, 817 F. 2d at 1365;

20  Weitzman v. Stein, 98 F. 3d 717, 719 (2nd Cir. 1996) ("While willfulness may not necessarily be

21  a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting

22  them.").

23         Where the above elements are satisfied, the Court has the inherent authority to punish

24  contempt and coerce compliance with its orders, and may also do so through an Order to Show

25  Cause. Int'l Union, 512 U.S. at 827 ("Direct contempts that occur in the court's presence may be

26  immediately adjudged and sanctioned summarily").  In order to exercise its inherent authority on

27  an immediate basis (i.e. without an separate Order to Show Cause), the Court need only find that

28  the contempt was direct – i.e. that the Court observed Friedman's contempt. Id. (Where court

1    observes evidence of contempt, it may exercise its inherent authority to issue immediate

2    sanctions).

3         Here, it is undisputed that the Court Order is in effect and that it requires specific conduct

4    by Friedman. Further, as set forth above, Friedman's statements and actions – including the

5    written statement Friedman prepared, now before the Court – are conclusive proof that Friedman

6    violated the Court Order by, among other things, failing to preserve and produce evidence

7    (including the HP laptop), refusing to produce for imaging all ESDs in his possession (including

8    the computer he presumably used to attempt to access ArcSoft data), failing to describe under

9    penalty of perjury how he defragmented the ArcSoft computer, and refusing to provide Court-

10   ordered certifications under penalty of perjury (including identifying what ArcSoft data he

11   accessed, when and how). Boggess Decl., ¶¶ 15-18, Ex. C.

12        Friedman's refusal to comply with nearly every provision of the Court's Order

13   demonstrates that he is not taking this matter seriously and that he is continuing to act in

14   conscious disregard to the serious harm his conduct has caused and is continuing to cause

15   ArcSoft. Likewise, Friedman's conduct demonstrates that he will not comply with future orders

16   unless meaningful consequences are imposed upon him. John T. v. Delaware County

17   Intermediate Unit, 318 F.3d 545, 553 (3d Cir. 2003) citing McComb v. Jacksonville Paper Co.,

18   336 U.S. 187, 193-94 (1949) ("District courts hearing civil contempt proceedings are afforded

19   broad discretion to fashion a sanction that will achieve full remedial relief. Often this discretion

20   involves ordering payment for the costs of past non-compliance").

21        Moreover, the Court need not conduct a separate factfinding hearing to conclude that

22   Friedman has violated the Court's Order, as Friedman's own statements – including a written

23   statement he prepared himself – are conclusive and sufficient proof of Friedman's disregard of

24   the Court's Order. Therefore, to compensate ArcSoft for the costs it was forced to incur in

25   bringing this Application (i.e. the costs of past non-compliance), and to provide an incentive for

26   Friedman comply in full with the TRO and all subsequent Court orders, ArcSoft requests that the

27   Court exercise its inherent authority to sanction Friedman in the amount of $13,970 (payable to

28   ArcSoft as the cost of ArcSoft's Application) and $3,500 per day thereafter, payable to the Court,

1   until Friedman is in full compliance with the Court's Order.  Sevey Decl., ¶ 25.[2]

2   **2.    In The Alternative, The Court Should Issue An Order To Show Cause**
    **As To Why Friedman Should Not Be Held In Civil Contempt**

3   In the alternative, if the Court concludes that despite the clear factual record

4   demonstrating Friedman's contempt, a separate factfinding hearing is justified, ArcSoft requests

5   that the Court set a hearing on shortened time for Friedman to show cause why he should not be

6   held in civil contempt and sanctioned for his violation of the Court Order, as set forth above.

7   John Roe, Inc. v. United States, 142 F.3d 1416, 1423 (11th Cir. 1998) (order to show cause

8   appropriate for request for sanctions based on civil contempt of court).

9   **3.    Friedman Has No Excuse For His Contempt Of The Court's Order**

10  Based on his prior statements to counsel, ArcSoft anticipates that Friedman will assert at

11  least four excuses to escape a finding of contempt, whether issued immediately or through an

12  Order to Show Cause: substantial compliance, lack of willfulness or purported inability to

13  understand his obligations, good faith, and/or impossibility.  Each is without merit and should be

14  ignored.

15  **a.    Friedman Has Not Substantially Complied With The Court's**
    **Order**

16

17  As an initial matter, Friedman cannot credibly assert that he has substantially complied

18  with the Court Order, as such an assertion requires Friedman to demonstrate that he has made

19  "every reasonable effort" to comply with the Court's Order, and that the obligations he did not

20  fulfill amount only to a "few technical violations."  In re Dual-Deck Video Cassette Recorder

21  Antitrust Litig., 10 F. 3d 693, 695 (9th Cir. 1993) (substantial compliance requires showing of

22  making every reasonable effort to comply and that violations are merely technical).

23  Friedman's violations are not in any sense "technical;" they undermine the core function

24  of the Court's Order (i.e. the preservation of evidence).  Moreover, Friedman has not made every

25  reasonable effort to comply with the Court's Order, but instead has refused multiple attempts by

26  _____

27  [2] At the time of trial, ArcSoft shall seek evidentiary sanctions as appropriate, that among other
    things, will address the data on the computer Friedman sent to HP for "repairs" on July 7, 2007.

28

-17-     MEMO RE PRELIM. INJ., EX PARTE
                                                                    APP. FOR SANCTIONS/CONTEMPT

1    ArcSoft's counsel to obtain his compliance with the Court Order, failing to produce for imaging

2    such crucial items as his personal computer (the "family laptop"), ridding himself of evidence

3    (such as the HP laptop) after receiving the Court's Order, and refusing to make the sworn

4    certifications the Court's Order expressly requires.  Boggess Decl., ¶¶ 15-18, 31; In re Dual-Deck

5    Video Cassette Recorder Antitrust Litig., 10 F. 3d at 695.

6            **b.    Friedman's Violation of The Court Order Was And Continues
                    To Be Willful And Knowing**

7

8            For the same reasons, Friedman also cannot credibly assert that his violations were not

9    willful.  Even if he could, "[t]he absence of willfulness does not relieve from civil contempt."

10   McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949); see also In re Crystal Palace

11   Gambling Hall, Inc., 817 F.2d 1361, 1365 (9th Cir. 1987) ("It does not matter what the intent of

12   the appellants was when they disobeyed the court's order.").  Here, Friedman has refused to obey

13   the plain language of the Court's Order despite repeated requests that he do so.  Boggess Decl., ¶¶

14   15-18, 31.  His claim that he does not understand the Court's Order because he is not represented

15   by counsel is no excuse in light of the fact that he has boasted that his relatives are attorneys, and

16   more importantly, the fact that Friedman has chosen to represent himself in a mistaken belief that

17   doing so will excuse his willful noncompliance.

18           **c.    Friedman Has Acted In Bad – Not Good – Faith**

19           Any assertion that Friedman acted in good faith also fails, as there is no "good faith"

20   exception to compliance with a court order and since, as set forth above, Friedman's conduct

21   (including, as but one example, his repeated refusal to produce his home computer for forensic

22   imaging) cannot possibly be construed as a good faith attempt at compliance.  In re Crystal Palace

23   Gambling Hall, Inc., 817 F.2d at 1365 ("A party cannot disobey a court order and later argue that

24   there were 'exceptional circumstances' for doing so. This proposed 'good faith' exception to the

25   requirement of obedience to a court order has no basis in law, and we reject the invitation to

26   create such an exception").

27

28

### d.    Friedman Is Able To Comply With The Court Order And Cannot Meet The Standard For Impossibility

Friedman will likely further claim it is impossible for him to comply with the Court Order (claiming that he cannot produce every ESD he has "ever" accessed), but such a claim does not ring true. To establish impossibility, Friedman must prove that (1) there is a specific reason why he cannot comply with the Court Order, (2) his inability to comply was not self-induced, and (3) in good faith, he made all reasonable efforts to comply. FTC v. Affordable Media, LLC, 179 F. 3d at 1239; Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F. 3d 500, 506 (8th Cir. 2000).

Friedman cannot satisfy any of these requirements. First, Friedman is a technically savvy sales executive who holds a Computer Science degree and clearly understands that the Court Order requires him to produce the ESDs he possesses – not a printer he once used in a hotel in Shanghai, not media with anti-pirating and similar technology embedded on it which prevents moving data to or from the media (such as his son's copy of the movie "Finding Nemo," etc.). Second, Friedman is the only person to blame for his failure to comply with the Court Order. Friedman had the weekend to gather his ESDs in orderly fashion and produce them on Monday for imaging. His failure to produce ESDs like his "family laptop" (of unidentified make and model) and other ESDs to which Friedman has access, his failure to state under oath what ArcSoft data he accessed and when, his failure to state under oath the means and method by which he deleted data from the ArcSoft laptop, are all conscious decisions Friedman made to not comply with the plain terms of the TRO. Boggess Decl., ¶¶ 15-18, 31. Furthermore, Friedman, who purported to be so "busy" on Monday July 9, 2007 that he could not find the time to meet with ArcSoft's counsel until 6:40 p.m., somehow managed to clear his calendar on the preceding Saturday and take the time to ship an ESD covered the by Court Order to Hewlett Packard for "repairs" of an unspecified "power problem." Boggess Decl., ¶ 17.

Given these and the other violations of the Order, Friedman cannot credibly assert that he has made "all reasonable efforts to comply." As such, Friedman's anticipated claim of impossibility fails. Affordable Media, LLC, 179 F. 3d at 1239; Chicago Truck Drivers, 207 F. 3d

MEMO RE PRELIM. INJ., EX PARTE
APP. FOR SANCTIONS/CONTEMPT

1  at 506.

2  **D.    The Court Should Consider Other Sanctions and Further Proceedings As It Deems Appropriate**

3

4      The events at issue began with Friedman stealing his ArcSoft laptop, and refusing the

5  Fremont Police's order to return the laptop.  Now, Friedman has disobeyed the Court's TRO.  The

6  manner in which he has conducted himself, in person and in writing, demonstrates a pattern of

7  lawlessness which indicates Friedman believes his actions ought to have no consequences, and

8  that he fancies himself clever enough to "talk his way out of" any thing he does.  So far, he has

9  succeeded.  In addition to imposition of the compensatory sanctions requested above, the Court

10  should consider punitive sanctions, including further fines and proceedings pursuant to 18 U.S.C.

11  Section 401(3).

12  **E.    The Court Should Order The Return Of ArcSoft's Bond**

13      Finally, ArcSoft requests that the Court issue an order requiring the Clerk of the Court to

14  return to ArcSoft the bond it posted in furtherance of the TRO now in effect.  Although bonds are

15  necessary to provide a remedy to a restrained party where injunctive relief proves not to have

16  been properly issued, where the evidence demonstrates that the TRO was warranted, the bond

17  should be returned.  Citizens for Better Environment v. Elm Grove, 472 F. Supp. 1183 (E.D. Wis.

18  1979) (when reasonable possibility of damage to enjoined party has passed, district judge may, in

19  his discretion, release bond); Matek v. Murat, 862 F. 2d 720, 723 (9th Cir. 1988) (damages under

20  an injunction bond are limited to those actual and proximately resulting from the effect of the

21  wrongful issuance of the injunction itself, as opposed to expenses of litigation).

22      As set forth above, Friedman's conduct in the days following the Court's issuance of a

23  TRO demonstrates that ArcSoft had – and continues to have – ample justification for seeking

24  immediate injunctive relief, including the ongoing threat of irreparable harm that it faces.  As

25  such, ArcSoft should no longer be burdened with the requirement that it post a bond of $25,000

26  and requests that its bond be returned to it.  Id.

27

28

1

## IV.    CONCLUSION

2          For the reasons stated above, ArcSoft urges the Court to enter an Order consistent with the

3    Proposed Order filed herewith.

4    DATED:  July 12, 2007          PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                    BRADFORD K. NEWMAN
5                                   SHANNON S. SEVEY

6

7                                   By: _Bradford K Newman_/888/
                                        BRADFORD K. NEWMAN
8
                                    Attorneys for Plaintiff
9                                   ARCSOFT INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C07-03512 SC                        -21-        MEMO RE PRELIM. INJ., EX PARTE
                                                         APP. FOR SANCTIONS/CONTEMPT